IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 13, 2014 Session

## STEPHANIE D. TURNER v. KEVIN TURNER

**Appeal from the Chancery Court for Fayette County**
**No. 12354     Martha B. Brasfield, Chancellor**

_____

**No. W2013-01833-COA-R3-CV - Filed July 7, 2014**

_____

Father appeals the trial court's order setting aside its prior judgment terminating Mother's parental rights. After a hearing, the trial court ruled that Father's failure to comply with the statutory notice requirements rendered the termination judgment void. Discerning no error, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., joined, and PAUL G. SUMMERS, SENIOR JUDGE, concurring separately.

Harriet S. Thompson, Bolivar, Tennessee, and Thomas F. Bloom, Nashville, Tennessee, for the appellant, Kevin Turner.

Charles W. McGhee, Memphis, Tennessee, for the appellee, Stephanie D. Turner.

**OPINION**

**Background**

The Plaintiff/Appellant Kevin Turner ("Father") and the Defendant/Appellee Stephanie Daphne Turner ("Mother") married in July of 1996. Two children were born to the marriage. On June 7, 1999, Father filed a complaint for absolute divorce against Mother. In his complaint, Father alleged that Mother was addicted to drugs and had been violent toward him. Father sought custody of the parties' two children, with Mother to have visitation. Mother

filed an answer and counter-complaint for divorce on September 2, 1999. Mother also filed a motion seeking visitation with the children and asking that both parents be ordered to undergo a psychological evaluation. On September 17, 1999, the trial court entered an order requiring both parties to undergo a psychological evaluation. On September 25, 1999, the trial court entered an agreed order granting Father temporary custody of the children and awarding Mother every-other-weekend visitation.

Prior to the divorce trial, on May 3, 2000, Mother's attorney sought to withdraw as counsel of record from the case. In his motion, Mother's attorney stated that he had lost contact with Mother and, as such, had been "unable to secure response and cooperation in this case." Indeed, it appears that at this point, neither Father, the children, nor Mother's attorney had any contact with Mother. As discussed below, the trial court eventually granted Mother's attorney's motion to withdraw from the case.

Based on Mother's failure to exercise her visitation rights since January 3, 2000, Father filed a Motion to Terminate Mother's Parental Rights on May 19, 2000. In the alternative, Father sought to suspend Mother's visitation rights based upon both Mother's failure to visit and her failure to undergo court-ordered drug testing. The trial court conducted a hearing on the Motion to Suspend Visitation on August 10, 2000. The trial court subsequently suspended Mother's unsupervised visitation with the parties' children, pending a clear drug screening. The trial court, however, did not address Father's Motion to terminate Mother's parental rights.

On October 19, 2000, the court allowed Mother's attorney to withdraw from the case and conducted a trial on Father's divorce complaint. Mother did not appear at trial. Based upon the record and the testimony offered at the trial, the trial court entered a final decree of divorce, and awarded Father exclusive custody of the parties' two children, who at this time were ages two and four. The trial court found that Mother had not had contact with the children for over ten months and reserved the issue of visitation until such time as Mother demonstrated that she was no longer addicted to drugs. The final decree was mailed to Mother's last known address.

Father subsequently remarried and his new wife desired to adopt the parties' children. On July 16, 2001, Father filed a new Petition to Terminate Parental Rights, again alleging that Mother had willfully abandoned the children by failing to have any contact with them since January 3, 2000, and in failing to provide any financial support for the same time period. On the same day, a civil summons was issued for Mother at 65 Oak Court Cove, Oakland, Tennessee requiring Mother to answer the Petition within thirty days. The summons was returned unserved on July 23, 2001. The process server indicated on the summons that he failed to serve the summons because Mother had moved. On July 25, 2001, a Non-Resident

Notice was filed in the trial court. The Notice indicated that Mother's current location was unknown. Notice was subsequently published in the weekly newspaper for Fayette County, Tennessee for four (4) consecutive weeks. The record, however, contains no order in which the trial court explicitly allowed service by publication, nor any request by Father to make substituted service.

More than four months later, Mother had not responded to Father's petition. Accordingly, on December 5, 2001, Father filed a Motion for Default Judgment. Father's attorney filed an affidavit stating that personal service upon Mother had failed because Mother had moved with no forwarding address. At this time, it is undisputed that it had been two years since Father had any contact with Mother or since Mother had contacted her children. A hearing was held on December 7, 2001, and a default judgment was entered against Mother on December 17, 2001, thereby terminating her parental rights. Father's wife subsequently sought to adopt the children in another court.

Nearly nine years later, on July 29, 2010, Mother filed a Petition to Set Aside the Order of Termination of Parental Rights. Mother alleged that Father knew that she did not reside at the address set forth on the summons and knew of her family contact information, but failed to make any efforts to learn her whereabouts to accomplish personal service. Mother offered no explanation for the passage of nine years before filing her motion to set aside the termination of her parental rights. A hearing was held, but not completed, on December 16, 2010. On or about August 8, 2011, Mother's attorney notified the Tennessee Attorney General that Mother intended to challenge the constitutionality of the statute of repose codified in Tennessee Code Annotated Section 36-1-113(q).[1] The final hearing was conducted on March 18, 2012.[2]

At the hearings, Father admitted that he was aware that Mother did not live at her last known address. Instead, Father admitted that at the time the summons was sent to that address, Father owned the home and Father's sister resided there. However, he testified that he had no information about Mother's whereabouts at the time he filed his termination petition, nor did he have the contact information of any friends or family who may have known Mother's

_____

[1] On January 24, 2012, the Tennessee Attorney General filed a brief in support of the constitutionality of Tennessee Code Annotated Section 36-1-113(q). However, the trial court did not consider the substantive issue of the constitutionality of the applicable statute of repose and neither party raises the issue of its constitutionality as an issue in this appeal.

[2] There is no explanation in the record for the approximately fifteen month delay between hearing dates, especially considering the possible consequences of the resolution of this issue to the children in this case.

location. Father further testified that he had no knowledge of Mother's out-of-town family, as he had only visited them once, for less than two weeks, in 1997. Further, Mother's own sister testified that she was not aware of where Mother was residing at that time, and the sister admitted that she had moved multiple times since Father's visit in 1997. Testimony also showed that another sister did not have a phone of any kind until 2003. In addition, the testimony showed that while Mother allegedly recovered from her drug addiction in 2004, she failed to make any effort to see her children until 2010.

Mother maintained, however, that Father could have located her if he had only attempted to do so, but that his failure to show that he made diligent inquiry into her location was fatal to his case. Father admitted that he declined to hire a detective to locate Mother, and that he knew that another resident was living at the home that he gave his counsel as the Mother's last known address. Father further admitted that he was aware that Mother had not lived at that address for more than a year at the time he filed his renewed Termination of Parental Rights Petition. Mother testified that her sisters were able to locate her during the time in question and in fact did contact her in 2000 when her mother passed away. Further, a former babysitter testified that both Father and Mother were well-acquainted with her and that she knew Mother's whereabouts during the time in question. Father admitted that at no time did he or his counsel ever file an Affidavit of Diligent Search or Inquiry with the trial court, pursuant to Tennessee Code Annotated Section 36-1-117(m)(3).

On July 18, 2012, the trial court entered an order setting aside the order terminating Mother's parental rights on the basis of improper service of process. The court first noted that Father knew that Mother did not reside at the address listed on the summons, and that the attempt to serve her at that address was futile at best and bad faith at worst. The court further found that Mother had no permanent address during the time at issue and that Father did not know the names or addresses of the people with whom Mother was living. The trial court ruled that while Father need not search drug houses for the Mother, he was required to attempt to ascertain Mother's whereabouts by trying to locate her family. The trial court did not rule on Father's argument that Mother's petition was barred by the applicable statute of repose, or Mother's argument that such statute of repose is unconstitutional.

Father filed a Notice of Appeal on August 14, 2012. Pending appeal, this Court determined that the order appealed was not final because it did not adjudicate the statute of repose issue, and dismissed the appeal without prejudice. The trial court subsequently ordered briefing on the issue. On July 17, 2013, the trial court ultimately ruled: (1) the initial order terminating Mother's rights was void; and (2) because the order was void, the statute of repose was inapplicable. Father filed a second notice of appeal on August 12, 2013, and this Court entered an order consolidating the two appeals.

## II. Analysis

### Rule 60.02 Relief

As an initial matter, we note that Mother's motion specifically asks that the trial court set aside the default judgment terminating her parental rights based on Rule 55.01 of the Tennessee Rules of Civil Procedure. Rule 55.01, however, does not govern a motion to set aside a default judgment. Instead, that request is governed by Rule 55.02: "For good cause shown the court may set aside a judgment by default in accordance with Rule 60.02." The character of a motion should be judged by its content, not by its caption. *Pickard v. Ferrell*, 45 Tenn.App. 460, 471, 325 S.W.2d 288, 292–93 (Tenn. 1959). Accordingly, Mother's motion is governed by Rule 60.02 of the Tennessee Rules of Civil Procedure.

Rule 60.02 provides, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1) and (2) not more than a year after judgment, order or proceedings was entered or taken.

Tenn. R. Civ. P. 60.02. The trial court's decision to grant or deny a motion to set aside a default judgment is reviewed under an abuse of discretion. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000). A trial court abuses its discretion when it has applied an incorrect legal standard or has reached a decision which is against logic or reasoning that caused an injustice to the party complaining. *Johnson v. Richardson,* 337 S.W.3d 816, 819 (Tenn. Ct. App. 2010) (citing *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). We will not overturn the trial court's decision merely because reasonable minds could reach a different conclusion. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001).

Because this case involves relief from a default judgment, rather than a trial on the

merits, we must construe Rule 60.02 liberally. ***Nelson v. Simpson***, 826 S.W.2d 483, 484 (Tenn. App. 1991). As this Court has explained:

> In deciding whether to grant a rule 60.02 motion to set aside the default judgment, courts consider three criteria: 1) whether the default was willful; 2) whether the defendant has asserted a meritorious defense; 3) the amount of prejudice which may result to the non-defaulting party. [***Tenn. Dep't of Human Serv. v. Barbee***, 689 S.W.2d 863, 866 (Tenn.1985).] If there is any reasonable doubt about whether the judgment should be set aside, the court should grant relief. ***Nelson v. Simpson***, 826 S.W.2d 483, 486 (Tenn. Ct. App. 1991).

***Reynolds v. Battles***, 108 S.W.3d 249, 252 (Tenn. Ct. App. 2003). Further, Rule 60.02 contains an express requirement that a motion under this rule, depending on the ground asserted for relief, must be sought either within one year, or within a reasonable time. *See* Tenn. R. Civ. P. 60.02.

The Tennessee Supreme Court has recognized, however, that a motion under Rule 60.02(3) may be made at any time. *See* ***Cain by Cain v. Macklin***, 663 S.W.2d 794 (Tenn. 1984). In ***Cain***, the defendant sought to set aside a default judgment on two grounds: (1) that the judgment was void because the trial court did not have subject matter jurisdiction; and (2) for "any other reason justifying relief from the operation of the judgment." ***Id.*** at 795. The Supreme Court first considered the defendant's argument that the judgment was void. The Court held that the "the issue of whether the circuit court lacked subject matter jurisdiction is determinative of whether or not relief should be granted pursuant to T.R.C.P. 60.02(3)." ***Cain***, 663 S.W.2d at 795. Thus, the appellant's entitlement to relief on this ground did not depend on whether the motion was made within a reasonable time. Ultimately, the Tennessee Supreme Court held that the defendant was not entitled to relief under Rule 60.02(3) because the trial court did not lack subject matter jurisdiction. The Supreme Court went on to hold that the defendant was also not entitled to relief pursuant to Rule 60.02(5) because the defendant had not sought relief within a reasonable time.

Although not clearly explained in the ***Cain*** Opinion, the lack of a timing requirement with regard to Rule 60.02(3) concerns the effect of a void judgment. As explained by this Court: "The Tennessee Rules of Civil Procedure do not prescribe a specific time limit for challenging a void judgment." ***Morelock v. Estate of Galford***, No. E2007-02254-COA-R3-CV, 2008 WL 4169943, at *3 (Tenn. Ct. App. Sept. 8, 2008) (citing ***Pittman v. Pittman***, Nos. 01-A-01-9301-CH00014, 87-077, 1994 WL 456348 at *2 (Tenn. Ct. App. Aug. 24, 1994)); *see also* ***Barbash v. Bruell***, No. E2005-00387-COA-R3-CV, 2006

WL 568230, at *2 (Tenn. Ct. App. March, 9, 2006), *perm. app. denied*, (Tenn. Sept. 5, 2006) ("A *prima facie* void judgment may be attacked at any time and is unenforceable.") (citing ***State ex rel Ragsdale v. Sandefur***, 215 Tenn. 690, 389 S.W.2d 266, 271 (Tenn. 1965); ***Muller v. Morelock***, 185 Tenn. 466, 470, 206 S.W.2d 27, 29 (Tenn. 1947); ***Team Design v. Gottlieb***, 104 S.W.3d 512, 525 (Tenn. Ct. App. 2002)). A Modern Legal Dictionary defines "void" as "absolutely null," going on to describe an order that is void *ab initio* as "that which is void in the beginning, [which] cannot be cured by waiver, acquiescence or lapse of time." Bryan A. Garner, *A Modern Legal Dictionary* 920 (2d ed. 2005). *Black's Law Dictionary* defines "void," similarly, as "[o]f no legal effect; null" or an "absolute nullity." *Black's* further explains that void *ab initio* means that the order or contract was "[n]ull from the beginning." *Black's Law Dictionary* 1709 (9th ed. 2009). Accordingly, when a judgment is void "in the beginning," the law treats the judgment as if it never came into existence. Because the judgment never legally came into existence, the ***Cain*** Court did not consider a specific time limit for the defendant's motion to set the judgment aside.[3]

---

[3] We note that this Court has indicated that some exceptional circumstances may require the Court to apply time limits to Rule 60.02(3) motions. *See **Kelso v. Decker***, 262 S.W.3d 307 (Tenn. Ct. App. 2008) ("[E]xcept for exceptional circumstances that might require a different rule, Tenn. R. Civ. P. 60.02's reasonable time limitation does not place a time limit on the right to challenge a judgment on the ground that it is void."). However, from our review, while some cases have cited this proposition, no cases have actually found an exceptional circumstance sufficient to justify the application of a time limit to a Rule 60.02(3) motion. Indeed, from our research, the first case that envisioned this exception from the general rule that a void judgment may be challenged at any time is ***Pittman v. Pittman***, No. 87-077, 01-A-01-9301-CH00014, 1994 WL 456348 (Tenn. Ct. App. Aug. 24, 1994). While ***Pittman*** has been cited for the proposition that courts may apply time limits to motions for relief from void judgments in our reading of the case, ***Pittman*** merely comments that some legal scholars have indicated that a time limit may be implied in some exceptional circumstances: "Federal courts have consistently held that Fed.R.Civ.P. 60(b)(4) [the federal counterpart to Rule 60.02(3)] does not impose a time limit on post-judgment motions challenging a void judgment, . . .although some text writers envision that exceptional circumstances may exist wherein the reasonable time limitation would require a showing of diligence on the part of the movant." ***Id.*** at *2 (citations omitted).

Father, in his brief, does not argue that an exceptional circumstance has occurred that would require the trial court to apply a time limit to Mother's motion pursuant to Rule 60.02(3). Instead, he merely argues that the judgment was not void. Typically, this Court will only address issues that are argued in the parties' briefs. *See* Tenn. R. App. P. 13(b). Further, from our review, some courts have indicated disagreement with ***Pittman's*** suggestion that any circumstances may be presented that would prevent a party from seeking relief from a void judgment. *See **Barbash v. Bruell***, No. E2005-00387-COA-R3-CV, 2006 WL 568230, at *2 (Tenn. Ct. App. March, 9, 2006), *perm. app. denied*, (Tenn. Sept. 5, 2006) (citing ***Pittman***, but declining to include the language that exceptional circumstances might indicate the need to apply a time limit to Rule 60.02(3) motions); ***Edwards v. Allen***, No. M2004-01944-COA-R3-CV, 2005 WL 3190336, at *17–*18 (Tenn. Ct. App. 2005), *aff'd*, 216 S.W.3d 278 (Tenn. 2007) ("It is clear that **void still means void** and lapse of time cannot validate an ordinance [or order] void *ab initio*.") (emphasis added) (citing ***New York Life Ins. Co. v. Brown***, 84 F.3d 137, 142–43 (5th Cir. 1996) ("[T]here is no time limit on an attack on a judgment as

(.....continued)

A voidable judgment, on the other hand, is described as being "[v]alid until annulled." *Id.* According to *Black's Law Dictionary*, "[t]his term describes a valid act that may be voided rather than an invalid act." *Id.* at 709–10; *see also* Bryan A. Garner, *A Modern Legal Dictionary* 920 (2d ed. 2005) (defining voidable as "capable of being voided or confirmed"). As recently illuminated by the Tennessee Supreme Court:

> [A] void judgment is one that is invalid on its face because the issuing court either lacked subject matter or personal jurisdiction

(.....continued)

void.")); *Stayton v. Stayton*, No. 87-283-III, 1988 WL 628, at *3 (Tenn. Ct. App. Jan. 6, 1988), *perm. app. denied*, (Tenn. March 28, 1988) (finding "inescapable" the conclusion that "there is no real time limitation where a void judgment has been entered"). Federal courts have, likewise, held that motions to set aside void judgment are not subject to any time limitations:

> In simplest terms, either a judgment is void or it is not. *See* 11 Wright and Miller, *Federal Practice & Procedure*, § 2862 (2d ed.). The Fourth Circuit's use of *de novo* review indicates that the threshold requirements, which necessitate the use of discretion by the district court, are not applicable in these circumstances. Moreover, in many of its Rule 60(b)(4) cases, our court of appeals has not mentioned such requirements. [citing cases] Other circuit courts have expressly declined to apply some or all of these requirements to Rule 60(b)(4) motions. *See, e.g., United States v. Boch Oldsmobile, Inc.*, 909 F.2d 657, 661 (1st Cir. 1990) (finding that regardless of timeliness, prejudice, or exceptional circumstances, under Rule 60(b)(4) relief must be granted if judgment is void); *Cent. Vermont Pub. Serv. Corp. v. Herbert*, 341 F.3d 186, 189 (2d Cir. 2003) (Rule 60(b)(4) motion may be brought at any time); *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir. 1998); *Jalapeno Prop. Mgt., LLC v. Dukas*, 265 F.3d 506, 515 (6th Cir. 2001); *Chambers v. Armontrout*, 16 F.3d 257, 260 (8th Cir. 1994); *Orner v. Shalala*, 30 F.3d 1307, 1310 (10th Cir. 1994); *Burke v. Smith*, 252 F.3d 1260, 1263 (11th Cir.2001) (finding that Rule 60(b)(4) motions "leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not"); *Combs v. Nick Garin Trucking*, 825 F.2d 437, 441–42 (D.C.Cir. 1987) (same).

*Campbell v. Beane*, No. 2:08-1102, 2012 WL 2998576, at *2, n.1 (S.D.W.Va. July 23, 2012) (citations omitted); *see also Carter v. Fenner,* 136 F.3d 1000, 1006 (5th Cir. 1998) ("The one-year limit applicable to some Rule 60(b) motions is expressly inapplicable, and even the requirement that the motion be made within a 'reasonable time,' which seems literally to apply to motions under Rule 60(b)(4) [the federal counterpart to Rule 60.02(3)] cannot be enforced with regard to this class of motion."). Based on Father's failure to argue this issue, as well as the foregoing research, we decline to apply a time limit to Mother's Rule 60.02(3) motion.

over the proceedings, or the judgment itself was outside of the pleadings. ***Gentry v. Gentry***, 924 S.W.2d 678, 680 (Tenn. 1996); *see also **Taylor v. State***, 995 S.W.2d 78, 83 (Tenn.1999) (holding that an order or decree is only void on its face if "the [issuing] court lacked jurisdiction or authority to render the judgment"); ***N.Y. Cas. Co. v. Lawson***, 160 Tenn. 329, 24 S.W.2d 881, 883 (1930). A voidable judgment, on the other hand, is one that is facially valid and "requires proof beyond the face of the . . . judgment to demonstrate its voidableness." ***Dykes v. Compton***, 978 S.W.2d 528, 529 (Tenn. 1998) (citing ***Archer v. State***, 851 S.W.2d 157, 161–62 (Tenn. 1993)). The distinction between void and voidable judgments is critical as to whether a court order may be challenged directly . . . or in a collateral proceeding . . . . *See **Lovlace v. Copley***, [418 S.W.3d 1, 19–20](Tenn. [] 2013) (explaining why a final order of adoption entered by the Chancery Court for Hickman County was not subject to collateral attack in subsequent visitation proceedings in the Chancery Court for Lewis County).

***Hood v. Jenkins***, --- S.W.3d ----, 2013 WL 6699505, *6–*7 (Tenn. 2013). Thus, a voidable judgment is valid until it is invalidated by an order of the court, and therefore, a motion to set aside that judgment must comply with the timing requirements of Rule 60.02. However, a void judgment is a complete nullity:

> A trial court's authority to issue orders requires both subject matter jurisdiction and personal jurisdiction, and, thus, while court orders are presumptively valid on their face, orders entered without jurisdiction of both the parties and the subject matter are generally void *ab initio*, such an order being considered a complete nullity, and subject to attack at any time. More specifically, it has been said that an order is void *ab initio* if the court did not have the jurisdiction to render the order, or if the court employed an unlawful mode of procedure in entering the order. Thus, for example, an order is void if the court that entered the order acted in a manner inconsistent with due process of law.

56 Am. Jur. 2d *Motions, Rules, and Orders* § 47.

As discussed above, a lack of jurisdiction over the subject matter or the parties may be sufficient to render a judgment void. As explained by the Tennessee Supreme Court:

A decree is absolutely void if it appears on the face of the record itself either that the Court had no general jurisdiction of the subject matter, or that the decree is wholly outside of the pleadings, and no consent thereto appears. **A decree is void as to any person shown by the record itself not to have been before the Court in person, or by representation**. A decree not prima facie void is valid and binding, until it is either (1) reversed by the Supreme Court, or by the Court of Appeals; or (2) is set aside on a complaint filed to impeach it.

*Gentry v. Gentry*, 924 S.W.2d 678, 680 (Tenn. 1996) (emphasis added). Further, this Court has held that an order entered without personal jurisdiction, as is alleged in this case, is not only void, but void *ab initio*, as that term is defined, *supra*. *See* *Sims v. Adesa Corp.*, 294 S.W.3d 581, 588 (Tenn. Ct. App. 2008), *perm. app. denied*, (Tenn. Oct. 27, 2008) (holding that a judgment was void *ab initio* where the defendant was never served with process, and therefore, the trial court never acquired personal jurisdiction over the defendant); *Outten v. Campbell*, No. M2001-00490-COA-R3-CV, 2002 WL 1042181, at *4 (Tenn. Ct. App. May 23, 2002) (concluding that an order entered by a court without personal jurisdiction over the defendant was void *ab initio*).

Failure to adhere to the Tennessee Rules of Civil Procedure in giving notice and serving process have been held to deprive the court of personal jurisdiction over the defendant, and result in a void judgment, when the deficiency is evident from the face of the record. For example, in *Reynolds v. Battles*, 108 S.W.3d 249 (Tenn. Ct. App. 2003), this Court held that improper notice of a motion for default judgment is sufficient to show a violation of the Rules of Civil Procedure and, therefore, excuse the defendant from having to assert a meritorious defense in order to gain relief pursuant to Rule 60.02, when the lack of notice is apparent from the face of the certificate of service. *Id.* at 251. In *Reynolds*, the certificates of service showed that the notice of the default judgment was sent to an incorrect address—408 Magnolia Street, rather than 508 Magnolia Street—and returned unclaimed. *Id.* at 250. According to the Court, "[u]nless the judgment is void, a default judgment will not be set aside unless the defendant has made a showing of a meritorious defense." *Id.* at 252. Accordingly, by excusing the defendants from having to assert a meritorious defense, the *Reynolds* Court essentially held that the improper notice of the lawsuit rendered the judgment granted thereon void.

In another case, *Frierson v. Johnson*, No. M2006-02598-COA-R3-CV, 2008 WL 555721 (Tenn. Ct. App. Feb. 28, 2008), this Court considered whether a defendant is entitled to relief from a default judgment when the judgment was entered upon notice that

impermissibly set the hearing prior to the date allowed pursuant to Rules 55.01,[4] 6.01[5] and 6.05[6] of the Tennessee Rules of Civil Procedure. ***Id.*** at *6. In ***Frierson***, the plaintiff served a motion for default judgment on the defendant by mail on April 26, 2006. The trial court held a hearing on May 5, 2006, at which hearing the defendant did not appear and judgment was entered in favor of the plaintiff. The Court of Appeals concluded that the plaintiff and the trial court had followed improper procedure. According to this Court, "the earliest the hearing could properly have been held was Monday, May 8, 2006." The Court, therefore, concluded that the plaintiff failed to comply with several Tennessee Rules of Civil Procedure. This failure, the Court held, rendered the judgment entered in the case void. ***Id.*** at *7.

To explain its decision that the judgment was void, the ***Frierson*** Opinion cites the Tennessee Court of Appeals decision in ***Estate of Vanleer v. Harakas***, No. M2001-00687-COA-R3-CV, 2002 WL 32332191 (Tenn. Ct. App. Dec. 5, 2002), on the issue of whether a judgment entered upon improper notice is void or voidable:

> The ***Vanleer*** decision includes a helpful discussion of the distinction between cases holding that "a default judgment entered without proof of proper notice is void" and other cases stating that "failure of notice is justification for excusable neglect, implying that the default judgment is merely voidable, not void." [***Vanleer***, 2002 WL 32332191, at *6, n.7.] The court gave the following analysis:

---

[4] Rule 55.01 of the Tennessee Rules of Civil Procedure requires that a defendant, other than one served by publication who has never made an appearance in the case, be given "a written notice of the application [for default judgment] at least five days before the hearing on the application."

[5] Rule 6.01 of the Tennessee Rules of Civil Procedure provides specific rules for computing the time prescribed or allowed by the Tennessee Rules of Civil Procedure, statute, or orders of the court. Rule 6.01 specifically requires that "[w]hen the period of time prescribed or allowed is less than eleven days," as it was in ***Frierson***, "intermediate Saturdays, Sundays and legal holidays shall be excluded in the computation."

[6] Rule 6.01 of the Tennessee Rules of Civil Procedure provides that:

> Whenever a party has the right or is required to do some act or take some proceedings within a prescribed period after the service of a notice or other paper upon such party and the notice or paper is served upon such party by mail, three days shall be added to the prescribed period.

Tenn. R. Civ. P. 6.05.

We think the distinction may lie in the proof of service presented to the trial court when default judgment is requested. Where, as in this case, the default judgment was granted on the basis of counsel's certificate of service, which constitutes proof of service, the judgment was validly entered at the time, and the question is whether it should have been set aside based upon equitable principles. Thus, the judgment was not void. The question of whether a default judgment entered without notice or compliance with other procedural requirements is primarily relevant herein to the question of whether, to obtain relief from judgment, the defendant is required to demonstrate a meritorious defense. Generally, a party seeking to set aside a default judgment must show that he or she has a meritorious defense to the suit, but that requirement does not apply where the default judgment is void.

*Id.* at *6, n.7. This reasoning is consistent with . . . ***Reynolds v. Battles***, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2003). In ***Reynolds***, . . . [b]ecause of the improper notice, which was apparent on the certificates of service, the court determined that the defendants' failure to assert a meritorious defense was not fatal to their motion to set aside the default judgment. *Id.* at 253.

***Frierson***, 2008 WL 555721, at *7. Applying the reasoning in ***Vanleer*** to the facts, the ***Frierson*** Court held that the judgment at issue was void, rather than voidable, because the insufficiency in the notice was evident from the face of the certificate of service. *Id.* Accordingly, the Court concluded that the trial court abused its discretion in denying the defendant's Rule 60.02 motion.

The question in this case is whether Father's alleged failure to make diligent efforts to locate Mother to accomplish personal service render the trial court's default judgment terminating Mother's parental rights void or voidable. If the judgment was merely voidable, Mother would have been required to not only assert a meritorious defense in her motion to set aside the judgment, but also would have been required to comply with the time requirements implicated in Rule 60.02. If, however, the judgment was void, Mother would not be required to assert a meritorious defense, and under the reasoning in ***Cain***, would not be required to

comply with the time requirements of Rule 60.02.

Mother argues that Father's failure to serve her personally, or to make a diligent inquiry into her whereabouts is a sufficient violation of both statute and the Tennessee Rules of Civil Procedure to render the default judgment terminating her parental rights void and of no effect. Service of process in termination of parental rights cases in Chancery Courts is accomplished pursuant to both statutes and the Tennessee Rules of Civil Procedure. *See* Tenn. Code Ann. § 36-1-117(m)(1);[7] ***In re Z.J.S.***, No. M2002-02235-COA-R3-JV, 2003 WL

_____

[7] Tennessee Code Annotated Section 36-1-117(m)(1) was amended in 2007 to expressly apply to termination proceedings. *See* 2007 Pub.Acts, c. 199, §§ 1, 2, eff. July 1, 2007. While this amendment was not in place during the initial termination proceeding at issue in this case, the parties agree that service of Father's termination petition was governed by Tennessee Code Annotated Sections 21-1-203 and 36-1-117(m)(3). From our review of the statutory history, the prior version of Tennessee Code Annotated Section 36-1-117 applicable at the time of Father's petition governed both adoption proceedings and termination proceedings. *See generally* Tenn. Code Ann. § 36-1-117 (2000). In addition, Tennessee Code Annotated Section 36-1-117(m)(3)'s current requirement, discussed in detail, *infra*, that a plaintiff file an affidavit with the court in order to gain service by publication "in these proceedings" is identical to the version of the statute in place at the time Father filed and served his petition. Nothing in the statute or its later amendment leads us to believe that Tennessee Code Annotated Section 36-1-117(m)(3)'s affidavit requirement was limited only to adoption proceedings in Circuit or Chancery Court, or termination proceedings in Juvenile Court. The legislature clearly limited subsections (m)(1) and (m)(2) to particular courts. *See* Tenn. Code Ann. § 36-1-117(m)(1) (2000) (applying only to adoption proceedings in Circuit and Chancery Courts); Tenn. Code Ann. § 36-1-117(m)(2) (2000) (applying to termination proceedings in juvenile court). The legislature did not, however, place the same limitations on subsection (m)(3), instead selecting broad language to describe the proceedings in which that provision applied. Indeed, this Court in ***In re Adoption of F.M.B.P.W.***, No. M2007-01691-COA-R3-PT, 2008 WL 821670 (Tenn. Ct. App. March 26, 2008), likewise applied the Tennessee Code Annotated Section 36-1-117(m)(3) affidavit requirement to a termination proceeding in Chancery Court prior to the effective date of the 2007 amendment to Tennessee Code Annotated Section 36-1-117(m)(1). ***Adoption of F.M.B.P.W.***, 2008 WL 821670, at *1–2 (applying Tennessee Code Annotated Section 36-1-117(m)(3) to a termination petition initiated in 2006 and concluded by final hearing in June 2007, prior to the July 1, 2007 effective date of the amendment to Tennessee Code Annotated Section 36-1-117(m)(1)); *see also* ***In re Adoption of M.D.W., Jr.***, No. M2007-01689-COA-R3-PT, 2008 WL 820561, at *1–2 (Tenn. Ct. App. March 26, 2008) (same); *c.f.* ***In re Z.J.S.***, No. M2002-02235-COA-R3-JV, 2003 WL 21266854, at *5 (Tenn. Ct. App. June 3, 2003) (noting, prior to the 2007 amendment to Tennessee Code Annotated Section 36-1-117(m)(1), that "the Tennessee Rules of Civil Procedure or the statutes governing substituted service" govern termination proceedings in Circuit and Chancery Courts). Thus, this Court has previously held that the requirement in Tennessee Code Annotated Section 36-1-117(m)(3) that a request for an order to serve a party by publication be accompanied by an affidavit in "these proceedings" applied to both adoption proceedings and termination proceedings in Chancery Courts prior to the 2007 amendment to Tennessee Code Annotated Section 36-1-117(m)(1). Moreover, Father's brief even describes the affidavit in Tennessee Code Annotated Section 36-1-117(m)(3) as "statutorily required." Accordingly, despite the fact that Tennessee Code Annotated Section 36-1-117(m)(1) did not expressly apply to termination proceedings in 2001, there is no dispute that the proceedings were governed by both Tennessee Code Annotated Sections 21-1-203(a) and 36-1-117(m)(3).

21266854, at *5 (Tenn. Ct. App. June 3, 2003) ("For termination proceedings commenced in the circuit or chancery courts, service must comply with the Tennessee Rules of Civil Procedure or the statutes governing substituted service."). Rule 4.08 of the Tennessee Rules of Civil Procedure defers to the statutes on constructive service, unless otherwise expressly provided in the rules: "In cases where constructive service of process is permissible under the statutes of this state, such service shall be made in the manner prescribed by those statutes, unless otherwise expressly provided in these rules." Accordingly, we look to statutes to determine whether constructive service, like the publication in this case, is sufficient to bring a defendant within the personal jurisdiction of the court. First, Tennessee Code Annotated Section 21-1-203(a) allows personal service of process to be dispensed with in certain situations, the pertinent one in this case being subsection (a)(5), "[w]hen the residence of the defendant is unknown and cannot be ascertained upon **diligent inquiry**." (Emphasis added). To dispense with process in any of the instances found in subsection (a), subsection (b) requires that the facts "be stated under oath in the bill, or by separate affidavit, or appear by the return." Specifically with regard to termination and adoption proceedings, Tennessee Code Annotated Section 36-1-117(m)(3) states that "[a]ny motion for an order of publication in these proceedings shall be accompanied by an affidavit of the petitioners or their legal counsel attesting, **in detail**, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought." (Emphasis added). The published service is to run four consecutive weeks in the newspaper designated in the order or by court rule. Tenn. Code Ann. § 21-1-204(b).

Thus, Tennessee Code Annotated Section 21-1-203(a) requires "diligent inquiry" to attempt to determine the unknown defendant's residence. Further, Tennessee Code Annotated Section 36-1-117(m)(3) requires that a plaintiff in a termination case seek an order permitting publication from the trial court, which request is to be accompanied by a detailed affidavit attesting to that party's efforts to locate the defendant. It is a basic rule of statutory construction "that the legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose." *Scales v. City of Oak Ridge*, 53 S.W.3d 649, 654 (Tenn. 2001) (quoting *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn. 2000)). In *Freeman v. City of Kingsport*, 926 S.W.2d 247 (Tenn. Ct. App. 1996), the Court of Appeals determined that the "diligent inquiry" language of Tennessee Code Annotated Section 21-1-203 essentially codifies the constitutional due process standard that "actual notice is required if the interested party's name and address are reasonably ascertainable." *Freeman*, 926 S.W.2d at 250. "Constructive service is the last resort and is only permitted when the defendant's residence is unknown." *In re Adoption of M.D.W., Jr.*, No. M2007-01689-COA-R3-PT, 2008 WL 820561, at *2 (Tenn. Ct. App. March 26, 2008). "Only when diligent inquiry fails to ascertain the residence of the defendant may service by publication be used." *In re Adoption of F.M.B.P.W.*, No. M2007-01691-COA-R3-PT, 2008 WL 821670, at *2 (Tenn. Ct. App. March 26, 2008).

Mother argues, and the trial court found, that Father's efforts in this case did not constitute a diligent inquiry to locate Mother. Without this diligent inquiry and the filing of an affidavit seeking service by publication, Mother argues that any resulting order terminating her parental rights is void. Father, in contrast, argues that he made all reasonable efforts to locate Mother under the circumstances because of Mother's own choice to engage in drugs and her transient lifestyle. Further, Father argues that even if he failed to make diligent efforts, his failure to do so renders the judgment merely voidable, and therefore, barred by the applicable statute of repose, discussed in more detail *infra*.

Reluctantly, we must agree with Mother. Although not cited by either party in their brief, this issue was recently decided by this Court in the highly analogous case of ***In re Adoption of F.M.B.P.W.***, No. M2007-01691-COA-R3-PT, 2008 WL 821670 (Tenn. Ct. App. March 26, 2008). In ***Adoption of F.M.B.P.W.***, the biological father of the child appealed the termination of his parental rights based on grounds of abandonment by failure to visit or support. ***Id.*** at *1. The pre-adoptive parents sent service by certified mail to biological father's last known address. The service, however, was returned unserved. The pre-adoptive parents then published the notice in the local newspaper for four consecutive weeks. ***Id.*** The biological father learned of the publication from a family member and wrote to the court objecting to the termination. Biological father included a return address on the envelope. ***Id.*** The court subsequently sent a notice of the final adoption hearing to biological father at this address, but biological father later claimed that he did not receive notice of the hearing until immediately prior to the hearing date. ***Id.*** Further, biological father argued that the notice and resulting judgment were invalid because he should have been personally served with the petition, rather than merely served through publication. ***Id.***

The Court of Appeals agreed with Father and held that the order terminating Father's rights was void due to pre-adoptive parents' failure to comply with Tennessee Code Annotated Sections 21-1-203(a) and 36-1-117(m)(3). According to the Court:

> [Tennessee Code Annotated Section] 36-1-117(m)(3) places the burden of demonstrating diligent inquiry upon the petitioners by requiring a detailed affidavit from the petitioners or their legal counsel attesting to all efforts made to determine the whereabouts of the unserved party. In this case, there is no affidavit from the petitioners or their attorney detailing their efforts to locate the biological father. The record is devoid of any such information beyond the petitioners contacting the Putative Father Registry. The petition itself does not say the biological father cannot be found, although it does suggest that possibility may exist by praying in the alternative for service by publication. There is no

order of the court making any findings about efforts to locate him. There is no transcript or statement of the evidence as to any testimony in this regard. From this record, it appears that the petitioners checked the Putative Father Registry, attempted service by certified mail to an old address and then published the notice.

*Id.* at *2 (footnotes omitted). Based on these deficiencies, which were evident from the face of the record, the Court held that the judgment rendered by the trial court was void:

> Even though the trial court found that "[a]ll persons entitled to notice of the proceedings have been served with process, and all necessary Parties are before the Court," this finding is not supported by the statutorily-required evidence that should be part of the record. Thus, it is evident from this record that the petitioners did not comply with the statutory "diligent inquiry" requirement for service by publication. Therefore, the biological father was not before the court and **all proceedings held pursuant to the notice were void**. *Overby v. Overby*, 457 S.W.2d 851, 852 (Tenn. 1970).

*Adoption of F.M.B.P.W.*, 2008 WL 821670, at *3 (emphasis added).

The *Adoption of F.M.B.P.W.* Court cited the Tennessee Supreme Court's decision in *Overby v. Overby* to conclude that a judgment rendered upon service by publication is void when it is evident from the face of the record that the conditions precedent to that form of service have not been met. *Id.* In *Overby*, our Supreme Court considered whether a party was bound by a divorce decree and child support order when the party was never served with the divorce complaint. *Overby*, 457 S.W.2d at 851. According to the Court:

> That a judgment In personam against a defendant who is not before the court either by service of process or by the entry of appearance is void there can be no question. *Dickson v. Simpson*, 172 Tenn. 680, 113 S.W.2d 1190; *Terrell v. Terrell*, 192 Tenn. 317, 241 S.W.2d 411.
>
> 'It is will settled that a judgment rendered against a defendant in any kind of a case, when process has never been served on him, or it, in the way provided by law; or where there has been no attachment of his, or its, property, and publication

-16-

made as required in attachment cases; and where there has been no voluntary appearance of the defendant, is clearly void, and a bill in equity will be to enjoin its collection.' . . .

*Overby*, 457 S.W.2d at 852. Based on the reasoning in *Overby*, because the pre-adoptive parents failed to personally serve the biological father, or to comply with the statutory rules allowing service by publication, the biological father was not properly within the court's jurisdiction and any judgment rendered against him was void. *See Adoption of F.M.B.P.W.*, 2008 WL 821670, at *3.[8]

The situation in this case is not only similar, but exactly the same. Just like in *Adoption of F.M.B.P.W.*, Father in this case sent service of process to Mother's last known address, which came back unserved. Unlike in *Adoption of F.M.B.P.W.*, Father in this case admitted that he was aware that Mother no longer lived at this property, as he was the owner of the property. Father further admitted that he made no other effort to locate Mother, instead immediately turning to service by publication, despite Tennessee Code Annotated Section 21-1-203(a)'s requirement that the plaintiff make a "diligent inquiry" into the defendant's

---

[8] Father cites this Court's case of *Morelock v. Estate of Galford*, No.E2007-02254-COA-R3-CV, 2008 WL 4169943 (Tenn. Ct. App. Sept. 8, 2008), as authority for the proposition that improper service by publication in a termination proceedings renders the judgment merely voidable, rather than void. In *Morelock*, the plaintiff collaterally attacked a termination and subsequent adoption in an estate case, rather than in the termination and adoption proceeding on the basis that service by publication was inappropriate where the biological father was served by publication despite the fact that biological mother knew of the biological father's whereabouts at the time service by publication was accomplished. *Id.* at *2–*3. The Court first noted that the plaintiff was collaterally, rather than directly, attacking the termination and adoption decrees, explaining:

> If an action or proceeding is brought for the very purpose of impeaching or overturning a judgment, it is a direct attack upon it. . . . On the other hand, if the action or proceeding has an independent purpose and contemplates some other relief or result, although the overturning of the judgment may be important, or even necessary to its success, then the attack upon that judgment is collateral.

*Id.* at *3 (quoting *Jordan v. Jordan*, 145 Tenn. 378, 239 S.W. 423, 445 (Tenn. 1922)). The Court then held that the termination and adoption orders were presumptively valid, and not void, because "the record pertaining to adoption . . . does not show *on its face* that service of process on [biological father] was improper." *Morelock*, 2008 WL 4169943, at *3 (emphasis added).

In contrast, in this case, Mother has made a direct attack on the validity of the termination order. Further, the *Adoption of F.M.B.P.W.* clearly holds that the failure to file a diligent inquiry affidavit in support of a motion to utilize service by publication is a deficiency that is evident from the face of the record.

-17-

whereabouts. To excuse this failure, Father argues that because of Mother's transient lifestyle and drug dependancy during the time at issue, any additional efforts to locate Mother would have been futile. Further, Father asserts that the trial court's focus on Father's failure to attempt to contact Mother's out-of-town family is inappropriate because he had no way to contact them.

The issue of whether a name and address are reasonably ascertainable, or can be found with diligent inquiry, "is a question of fact and must be determined upon trial." *Freeman*, 926 S.W.2d at 250. The trial court in this case specifically held that Father did not make a diligent inquiry in order to relocate Mother. As previously discussed, a trial court's findings of fact are entitled to a presumption of correctness on appeal. *See* Tenn. R. App. P. 13(b). The evidence in the record does not preponderate against the trial court's finding on this issue. Father admitted at the evidentiary hearing on Mother's motion to set aside the default judgment that the only efforts he took to locate Mother were: (1) sending service of process to a home in which he knew Mother no longer resided; and (2) consulting with counsel. Father testified that he did not attempt to locate any of Mother's family or friends, or otherwise make any actual effort to locate Mother. The term "diligent" is defined as "[c]areful; attentive; persistent in doing something." *Black's Law Dictionary* 523 (9th ed. 2009). Further, this Court has previously held that: "Actions taken to achieve service of process in these [termination] cases should not be merely perfunctory." *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 148 (Tenn. Ct. App. Dec. 5, 2007) (citing *In re C.L.M.*, No. M2004-02922-COA-R3-PT, 2006 WL 842917, *5 (Tenn. Ct. App. March 30, 2006). From the facts in the record, Father's actions in this case fail to meet the high standard required to sustain a finding of diligent inquiry or effort: Father was neither attentive nor persistent in his efforts to locate Mother; he, instead, chose to make no effort.

The record also reflects that Father failed to seek a court order allowing him to serve Mother by publication, as required by Tennessee Code Annotated Section 36-1-117(m)(3); the record contains neither a motion seeking an order allowing publication or an order allowing publication to go forward. In addition, like the pre-adoptive parents in *Adoption of F.M.B.P.W.*, nothing in the record suggests that Father ever filed an affidavit with the court prior to the service by publication. Father admitted on cross-examination that he could not recall ever detailing, under oath, his efforts to locate Mother, in the underlying termination proceeding. Indeed, from our review of the record, it appears that Father made no efforts to locate Mother, and therefore, had nothing to detail. Instead, Father merely insisted that he had consulted an attorney, which he contended was a sufficient effort on his part. From our review of the record, the only justification in the record for the service by publication in the original proceeding is an affidavit by Father's counsel in support of his motion for a default judgment stating that:

After a failure to obtain service on [Mother] because she had moved with no[] forwarding address, service on [Mother] was obtained by publication . . . . With no forwarding address available, no Notice of Hearing on the Motion for Default Judgement were [sic] mailed to [Mother].

Accordingly, the only affidavit in the record that could qualify as an affidavit pursuant to Tennessee Code Annotated Section 36-1-117(m)(3) not only does not provide sufficient detail of "all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought," the affidavit provides no indication that any efforts were ever expended to locate Mother. Tenn. Code Ann. § 36-1-117(m)(3).

A similar affidavit was likewise held to be insufficient in ***Adoption Place, Inc. v. Doe***, 273 S.W.3d 142 (Tenn. Ct. App. 2007). In ***Adoption Place***, an unknown biological father challenged the termination of his parental rights. Specifically, the unknown biological father argued that service by publication was improper where the adoption agency made no effort to ascertain the unknown's father's name or whereabouts. Instead, the adoption agency merely filed an affidavit with the trial court seeking service by publication and stating that: "The birth mother did not know who the father of the child was and simply stated that she was at a party in Jackson, Tennessee when [the conception] occurred. . . . This agency has no other source to seek the identity of this father." ***Id.*** at 148. The trial court held that the facts stated in the affidavit showed that the adoption agency "made reasonable efforts to ascertain the identity of the father from the minor mother." The Court of Appeals, however, disagreed, citing the lack of findings as to the evidence the trial court relied upon to make this finding. According to the Court:

Given the woeful absence of information regarding the steps taken to identify the father provided in these affidavits and the record, this Court must conclude on this record that the preponderance of the evidence shows [the adoption agency] did not carry its burden of demonstrating the "diligent inquiry" required by Tenn. Code Ann. § 21-1-203(a) in order to use service by publication.

*Adoption Place*, 273 S.W.3d at 148 (footnotes omitted). The Court, thus, held that "[s]ince the requirement for service by publication was not met, the unknown father was not before the court, and all proceedings held pursuant to the notice were void." ***Id.*** (footnote omitted) (citing ***Overby***, 457 S.W.2d at 852). In this case, the affidavit in the record contains even less information regarding the steps taken to locate Mother. Accordingly, we must likewise conclude that the requirements for service by publication were not met, that the trial court

never acquired jurisdiction over Mother, and that the resulting order terminating Mother's parental rights was void.

We note that Father argues that regardless of whether he was required to make a diligent inquiry into Mother's whereabouts, his failure to act should be excused because he had no way to ascertain Mother's whereabouts or to contact her and that, as such, any efforts on his part would have been futile. We conclude, however, that Father's proffered explanation is insufficient to excuse his failure to make a diligent inquiry into Mother's whereabouts. Regardless of whether any efforts by Father to locate Mother may have been futile, Tennessee Code Annotated Sections 21-1-203(a) and 36-1-117(m)(3) require a plaintiff to make more than a cursory effort to locate the defendant, and nothing in either statute appears to excuse this effort when one party believes, however reasonably, that such efforts will not produce results. Indeed, in *Adoption Place*, the adoption agency had far less information to utilize in its attempt to find the unknown biological father, as the teenage mother had been unable to even provide the agency with the unknown father's name. *See Adoption Place*, 273 S.W.3d at 148. Regardless, the Court held that the adoption agency was required to expend some effort to locate the unknown biological father, without giving any indication that the futility of the effort would excuse the agency's inaction. *Id.* Further, by allowing service by publication, Tennessee Code Annotated Sections 21-1-203(a) and 36-1-117(m)(3) recognize that not all efforts to locate every defendant will be successful; however, these statutes place the burden on the plaintiff to demonstrate that he or she has made a diligent inquiry into the defendant's whereabouts before service by publication is authorized. Father failed to meet this burden.

## A. Statute of Repose

In the trial court, Father also argued that Mother's attempt to set aside the judgment terminating her parental rights is barred by the applicable statute of limitations. Tennessee Code Annotated Section 36-1-113(q):

> After the entry of the order terminating parental rights, no party to the proceeding, nor anyone claiming under such party may later question the validity of the termination proceeding by reason of any defect or irregularity therein, jurisdictional or otherwise, but shall be fully bound thereby, except based upon a timely appeal of the termination of the order as may be allowed by law; and in no event, for any reason, shall a termination of parental rights be overturned by any court or collaterally attacked by any person or entity one (1) year from the date of entry of the final order of termination. This provision is intended as a statute

of repose.

Tenn. Code. Ann. § 36-1-113(q). In determining the proper interpretation to be given to a statute, we must employ the rules of statutory construction. The Tennessee Supreme Court recently reiterated the "familiar rules," stating:

> Our role is to determine legislative intent and to effectuate legislative purpose. [*Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 526 (Tenn. 2010)]; *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. *See Lee Med., Inc.*, 312 S.W.3d at 526; *Hayes v. Gibson Cnty.*, 288 S.W.3d 334, 337 (Tenn. 2009); *Waldschmidt v. Reassure Am. Life Ins. Co.*, 271 S.W.3d 173, 176 (Tenn. 2008). When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. *See Lee Med., Inc.*, 312 S.W.3d at 527; *Green v. Green*, 293 S.W.3d 493, 507 (Tenn. 2009). When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. *Lee Med., Inc.*, 312 S.W.3d at 527–28. However, these non-codified external sources "cannot provide a basis for departing from clear codified statutory provisions." *Id.* at 528.

*Mills v. Fulmarque*, 360 S.W.3d 362, 368 (Tenn. 2012).

Taking the plain language of the statute alone, Tennessee Code Annotated Section 36-1-113(q) appears to bar relief to a party seeking to set aside an order of termination, even when the ground for relief is that the trial court never acquired jurisdiction over either the subject matter or the parties. However, as explained by this Court:

> The Court has a duty to construe a statute so that no part will be inoperative, superfluous, void or insignificant. The Court must give effect to every word, phrase, clause, and sentence of the Act in order to achieve the Legislature's intent, and it must construe a statute so that no section will destroy another. [*Mangrum v. Owens*, 917 S.W.2d at 246; (quoting *Worrall v. Kroger Co.*, 545

-21-

S.W.2d 736, 738 (Tenn. 1977))] (citing *City of Caryville v. Campbell County*, 660 S.W.2d 510, 512 (Tenn. Ct. App. 1983); *Tidwell v. Collins*, 522 S.W.2d 674, 676 (Tenn. 1975)). The statute should be construed as a whole, and **a particular section should not be read in isolation of the remainder of the statute**. *State ex rel. McGhee v. St. John*, 837 S.W.2d 596, 604 (Tenn. 1992).

*State ex rel. Working v. Costa*, 216 S.W.3d 758, 769 (Tenn. Ct. App. 2006) (emphasis added). Accordingly, we must read Tennessee Code Annotated Section 36-1-113(q) in conjunction with Tennessee Code Annotated Section 36-1-117(m)(3)'s requirement that in order to utilize service by publication, a party seeking to terminate parental rights must first seek the approval of the trial court to do so, by filing an affidavit detailing the party's efforts to locate the absent parent.

The issue of whether Tennessee Code Annotated Section 36-1-113(q) bars Rule 60.02 relief from a judgment that is void for failure to comply with Tennessee Code Annotated Section 36-1-117(m)(3) is an issue of first impression in this Court. However, we need not decide the issue in this case. In Mother's brief to this Court, she asserts that "Father attempts to assert that even a void order triggers the Statute of Repose." However, in Father's reply brief, he asserts that "Father does not argue that 'even a void order triggers the Statute of Repose.'" Instead, he merely asserts that the order is voidable. Thus, we interpret Father's reply brief as conceding that Tennessee Code Annotated Section 36-1-113(q) does not bar a party from seeking to set aside a termination order that is facially void. *See Pratcher v. Methodist Healthcare Memphis Hospitals*, 407 S.W.3d 727, 739 (Tenn. 2013) (holding that a statute of repose defense may be waived by failure to timely assert it). Because we conclude that the judgment terminating Mother's parental rights is void, and Father does not appear to argue that Tennessee Code Annotated Section 36-1-113(q) bars relief from a void judgment, we decline to address this issue.

## Laches

Finally, Father asserts that Mother's motion to set aside the termination order should be barred by the doctrine of laches. As discussed in 5 Nancy F. MacLean & Bradley A. MacLean, *Tennessee Practice: Civil Procedure Forms* § 8.425 (2012) (hereinafter, *Tennessee Practice Forms*):

> Laches is an equitable doctrine that bars an action where a party's unexcused or unreasonable delay is prejudicial to its adversary. Equity will not intervene when the plaintiff has delayed

-22-

unreasonably in enforcing his or her rights. ***Hannewald v. Fairfield Communities, Inc.***, 651 S.W.2d 222 (Tenn. Ct. App. 1983). In order for laches to be a successful defense, the defendant must show not merely the length of time which has elapsed, but that "because of such lapse of time, the party relying on laches as a defense has been prejudiced by the delay." ***Brister v. Brubaker's Estate***, 336 S.W.2d 326, 332 (Tenn. Ct. App. 1960). Prejudice is a required element to the defense of laches. ***Dement v. Kitts***, 777 S.W.2d 33 (Tenn. Ct. App. 1989).

Note that to give rise to estoppel by delay in asserting a legal right, there must be an opportunity to speak or act and an obligation or duty to do so. [***State ex rel. Grant v. Prograis***, 979 S.W.2d 594 (Tenn. Ct. App. 1997)(noting that a long delay in claiming retroactive support on behalf of minor child did not work an estoppel).]

*Tennessee Practice Forms*, at § 8.425.

In a somewhat similar case regarding the application of laches to a void ordinance, the Court of Appeals explained: "Although we recognize that laches may, under some circumstances, bar an individual complainant from asserting the invalidity of an ordinance, we cannot agree that mere passage of time will suffice to instill life into an enactment which was void at its inception." ***Edwards v. Allen***, No. M2004-01944-COA-R3-CV, 2005 WL 3190336, at *17–*18 (Tenn. Ct. App. 2005), *aff'd*, 216 S.W.3d 278 (Tenn. 2007) (citing ***Hart v. Bayless Inv. & Trading Co.***, 86 Ariz. 379, 346 P.2d 1101, 1109–10 (Ariz. 1959). As previously discussed, this Court has held that a judgment entered without personal jurisdiction over the defendant is void *ab initio*, *see* ***Sims***, 294 S.W.3d at 588, or at its inception. While this holding applied to the validity of an ordinance, we believe it carries equal weight with regard to a void judgment. As this Court explained: "A void judgment cannot be revived, even when the passage of time has rendered it final in accordance with the Rules of Civil Procedure." ***Outten***, 2002 WL 1042181, at *4; *see also* ***Miller v. Glacier Development Co.***, 293 Kan. 665, 673, 270 P.3d 1065 (2011) ( "A motion to set aside a void judgment may be made at any time, because the passage of time cannot cure the defect of a void judgment."). Dawn Coppock in *Coppock on Tennessee Adoption Law* also explained that:

It goes without saying that a person's parental rights cannot be terminated without notice and an opportunity to be heard. A judgment against a defendant who is not properly before the court by service of process or entry of an appearance is void. **Such a judgment cannot be revived by the passage of time or**

**subsequent proceedings.**

Dawn Coppock, *Coppock on Tennessee Adoption Law* 32 (5th ed. 2005) (hereinafter, "*Tennessee Adoption Law*") (emphasis added). Further, as previously discussed, a void judgment, by its very definition, is not altered by the passage of time. Bryan A. Garner, *A Modern Legal Dictionary* 920 (2d ed. 2005) (describing a judgment that is void *ab initio* as "that which is void in the beginning, [which] cannot be cured by waiver, acquiescence **or lapse of time**.") (emphasis added). Under these circumstances, we decline to hold that laches bars Mother's claim.

We recognize that the resolution of this case results in profound consequences for not only the parties, but the minor children at issue. At the time Mother returned to court to assert her rights, Mother had been removed from the children's lives, by her own hand, for nearly a decade. In that period of time, the children were adopted by Father's wife, and presumably, worked to move forward with their lives in the face of Mother's abandonment. We do not set aside the order terminating Mother's parental rights lightly, nor do we ignore the havoc that this decision may create for the children in the future. Regardless of those issues, however, we cannot disregard the fact that the trial court failed to properly acquire jurisdiction prior to terminating Mother's parental rights. "A judgment that is void because it was obtained without *in personam* jurisdiction over the defendant is void for all purposes . . . ." ***Hart v. Tourte***, 10 S.W.3d 263, 268 (Tenn. Ct. App. 1999). Tennessee legal commentators have previously recognized the risk when a parental termination judgment is entered without personal jurisdiction over the defendant: "Default judgments [in termination proceedings] based on improper service will be a disaster if challenged. This is why parents' counsel must attend very carefully to service of process." *Tennessee Adoption Law*, at 32. Here, Father failed to make diligent efforts to locate Mother before resorting to service by publication. As a result, the trial court never acquired jurisdiction over Mother. Accordingly, the order terminating Mother's parental rights was void *ab initio*. The trial court, therefore, did not err in granting Mother's motion to set aside the void judgment.

### IV. Conclusion

The judgment of the Chancery Court of Fayette County is affirmed and this cause is remanded to the trial court for further proceedings as are necessary and are consistent with this Opinion. Costs of this appeal are assessed to Appellant Kevin Turner, and his surety.

_____
J. STEVEN STAFFORD, JUDGE