**THE ADOPTION PLACE, INC.**

v.

**John DOE.**

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Assigned on Briefs Oct. 10, 2007.

Dec. 5, 2007.

Permission to Appeal Denied by
Supreme Court Feb. 4, 2008.

Matthew F. Wright, Nashville, Tennessee, for the appellant, John Doe.

Connie Reguli, Brentwood, Tennessee, for the appellee, The Adoption Place, Inc.

## OPINION

ANDY D. BENNETT, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., J., and J. STEVEN STAFFORD, SP.J., joined.

This is an appeal of the termination of the parental rights of an unknown father. The appeal challenges the service by publication on the unknown father, the protective order that effectively prohibited the attorney for the unknown father from conducting discovery regarding the identity of the unknown father, and the findings by clear and convincing evidence that the unknown father had abandoned the child and that it was in the best interest of the child to terminate the unknown father's parental rights. We reverse the actions of the trial court and remand for further proceedings consistent with this opinion.

On June 9, 2006, the birth mother of A.I.D. surrendered her parental rights. These records are sealed. In August 2006, The Adoption Place filed a petition to terminate the parental rights of the father. The Petition stated that the birth mother "refused to reveal any information on any presumed biological father of this child."[1] The Petition further stated that the birth mother was a minor whose identity should be protected. The only details in the Petition about the conception are that the child was conceived in Jackson, Tennessee in August 2005. It also alleged that no person claiming to be the biological father was

---

1. The Amended and Supplemental Petition to Terminate Parental Rights, which The Adoption Place filed December 8, 2006, rephrases this statement to say, "The birth mother stated that she had no information on any presumed biological father of this child other than this conception occurred in Madison County, Tennessee, 'at a party.' "

present at the child's birth and that no person had come forward claiming any parental interest in the child. The Petition asked for service on the unknown father by publication in the county where conception occurred. An order of publication was filed August 11, 2006; however, the publication was never proved because the newspaper ceased publication and did not provide an affidavit of publication. Also at this time the Court appointed a Guardian Ad Litem for the child and an attorney to represent the unknown father.

As a result of a hearing held on November 7, 2006, which apparently raised questions about the birth mother whose identity had not been revealed, the Court appointed an Attorney Ad Litem and a Guardian Ad Litem for the birth mother. The Court allowed The Adoption Place to amend and supplement the Petition to add an allegation that no person alleging to be the father had a meaningful relationship with the child and to ask that the father's parental rights be terminated in accordance with Tenn.Code Ann. § 36–1–113(g). The Petition was supported by the affidavit of Janet Morris, a principal of The Adoption Place.[2] The attorney for the unknown father filed an answer denying all allegations and demanding strict proof thereof. At a hearing on December 19, 2006, the Court denied the request of the attorney for the unknown father that the birth mother's name appear in the service by publication, provided the publication included "detailed information regarding the circumstances surrounding the conception" of the child.

The Order of Publication, filed January 17, 2007, read as follows:

It appearing from the petition in this cause, which is sworn to, that the birth father of a Baby Doe is of African–American descent. Said child was conceived in Madison County, Tennessee on or about August 2005. The birth mother is of African–American descent, approximately 5′2″ in height and weighing approximately 150 lbs. She was under the age of eighteen (18) at the time of conception and birth of the child. The birth father is of African–American descent, of average height and weight. The child was conceived while the parents were attending a party held in or about Jackson, Tennessee. The parents left the building and entered a vehicle wherein this child was conceived. Said father, whose exact identity is unknown, cannot be personally served with process. It is ordered that publication be made for four consecutive weeks in the West Tennessee Examiner, a newspaper published at Jackson, Madison County, Tennessee, requiring the said respondent to appear before the Judge of said Court on or before thirty (30) days from the date of the last publication hereof and make defense to the Petition filed in the above cause, which seeks terminate [sic] his parental rights. Otherwise said Petition will be taken for confessed and cause proceeded with ex parte.

The notice was published in the West Tennessee Examiner on January 25, February 1, 8, and 15, 2007. In addition to the above text, the notice was headed by the words, "Court for Rutherford County at Murfreesboro, Tennessee," followed by the style of the case and the docket number.

The attorney for the unknown father filed a set of interrogatories and a request for documents from The Adoption Place. Generally speaking, the information sought concerned information about the birth father or that could lead to the identification

---

**2.** This affidavit is identical, including the same typographical errors, as the affidavit signed by Lindee Vaught which supported the original Motion for Service by Publication.

of the birth father, the name of the birth mother and information about any communications and agreements The Adoption Place had with the birth mother. Similar requests were sent to the Attorney Ad Litem for the birth mother, who promptly sought a protective order. The Court held a hearing on March 8, 2007 and examined documents in camera from the surrender proceeding. In an order filed March 29, 2007, the Court found that the birth mother had testified under oath that she did not know the identity of the father. The Court granted the requested protective order and an oral motion by The Adoption Place for a protective order.

The Court held the final hearing on the petition on April 7, 2007. The sole witness was Janet Morris. Through Ms. Morris, evidence was introduced that a request had been sent to the Putative Father Registry and that no putative father of this child had registered.

The attorney for the father challenged the service by publication on due process grounds. In its order of May 4, 2007, the Court found that:

> [S]aid publication contained specific details regarding a description of the biological minor mother and father as well as the location and circumstances surrounding the child's conception. Said details met the requirements of due process to put the Respondent, John Doe, on notice that he had conceived a child and the Adoption Place has made reasonable efforts to ascertain the identity of the father from the minor mother.

The Court also found that no one claiming to be the father of this child had filed with the Putative Father Registry. The Court went on to find by clear and convincing evidence that the unknown father:

> has willfully and intentionally abandoned this child by way of his failure to provide support, visit, or establish a relationship

with the child or the minor mother for more than four consecutive months prior to both the filing of the original Petition as well as the Amended and Supplemental Petition to Terminate Parental Rights.

The Court further found by clear and convincing evidence that it was in the child's best interest to terminate the rights of the unknown father. This finding was apparently based on the view of the Guardian Ad Litem and on the unknown father's willful failure to support the child or visit the child. Therefore, the Court terminated the parental rights of the unknown father and awarded full guardianship of the child to The Adoption Place.

## STANDARD OF REVIEW

The appellate court reviews the findings of fact of the trial court *de novo* upon the record with a presumption of correctness unless the preponderance of the evidence is otherwise. *In re Valentine*, 79 S.W.3d 539, 546 (Tenn.2002). Issues of law are reviewed *de novo* upon the record with no presumption of correctness. *In re Valentine*, 79 S.W.3d at 546.

## NOTICE ISSUES

The unknown father, through his appointed attorney, appeals from the trial court's decision. He challenges the service by publication because the notice published in the newspaper did not contain the birth mother's name and because it was published in Madison County without any evidence presented to the Court that Madison County was the place of conception.

Any analysis of a termination of parental rights case must initially acknowledge that a parent's right to the care, custody and control of his or her child is a fundamental right. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn.Ct.App.2000). This

is not an absolute right, for the rights of a parent may be terminated if there is clear and convincing evidence that a statutory reason for termination exists. *In re C.W.W.*, 37 S.W.3d at 473. These statutory reasons are found in Tenn.Code Ann. § 36–1–113(g).

Service of process of the petition to terminate parental rights is governed by Tenn.Code Ann. § 36–1–117. Tenn.Code Ann. § 36–1–113(e). The version of Tenn. Code Ann. § 36–1–117(m)(2) in effect prior to July 1, 2007, which governs this case, referenced the Rules of Juvenile Procedure.[3] Rule of Juvenile Procedure 10(c)(2) provides that service by publication be in accordance with Tenn.Code Ann. § § 21–1–203 and 204. Tenn.Code Ann. § 21–1–203(a) says personal service may be dispensed with: "(4) When the name of the defendant is unknown and cannot be ascertained upon diligent inquiry; (5)When the residence of the defendant is unknown and cannot be ascertained upon diligent inquiry...." Tenn.Code Ann. § 21–1–204, in pertinent part, provides:

> (c) The order for publication in lieu of personal service, may be made at any time after the filing of the bill. The order of publication should contain the names of the parties, the style of the court in which the proceedings are had, and the name of the place where the court is held, without any brief or abstract of facts, unless directed by the court.
>
> (d) When the suit is against an unknown defendant, the order of publication should describe such unknown party, as near as may be, by the character in which he is sued, and by reference to his title or interest in the subject matter of the litigation.

■■■ The first point to examine in deciding whether the service was sufficient under Tennessee law is not what the published notice contained, but rather whether there could have been better service.[4] Tenn.Code Ann. § 21–1–203(a) requires "diligent inquiry" to attempt to determine the defendant unknown father's name and residence. It is a basic rule of statutory construction "that the legislature is presumed to use each word in a statute deliberately, and that the use of each word conveys some intent and has a specific meaning and purpose." *Scales v. City of Oak Ridge*, 53 S.W.3d 649, 654 (Tenn.2001) (quoting *Bryant v. Genco Stamping & Mfg. Co.*, 33 S.W.3d 761, 765 (Tenn.2000)). In *Freeman v. City of Kingsport*, 926 S.W.2d 247 (Tenn.Ct.App.1996), the Court of Appeals determined that the "diligent inquiry" language of Tenn.Code Ann. § 21–1–203 essentially codifies the constitutional due process standard that "actual notice is required if the interested party's name and address are reasonably ascertainable." *Freeman*, 926 S.W.2d at 250.[5]

---

3. Tenn.Code Ann. § 37–1–117(m)(2) was amended by 2007 Pub. Acts, Ch. 199, § 2. The amendment was effective July 1, 2007.

4. Tenn. Rule of App. Proc. 13(b) permits the appellate court to consider issues not raised by the parties "in order, among other reasons: (1) to prevent needless litigation, (2) to prevent injury to the interests of the public, and (3) to prevent prejudice to the judicial process." We find that reason (3) applies in this instance.

5. *Freeman* involved an *in rem* action. The Court quotes *Mennonite Board of Missions v. Adams*, 462 U.S. 791, 103 S.Ct. 2706, 77 L.Ed.2d 180 (1983), to show that efforts are required "to provide actual notice to all interested parties *comparable to the efforts that were previously required only in in personam actions*". *Freeman*, 926 S.W.2d at 250 (quoting *Mennonite Board*, 462 U.S. at 796, fn. 3, 103 S.Ct. 2706)(emphasis added in *Freeman*). Rule 10(c) of the Rules of Juvenile Procedure comports with this standard by stating that, after reasonable effort to locate a party or his

Only when diligent inquiry fails to ascertain the name of the defendant or his residence may service by publication be used.

 Tenn.Code Ann. § 36–1–117(m)(3) places the burden of demonstrating diligent inquiry upon the petitioners:

Any motion for an order for publication in these proceedings [6] shall be accompanied by an affidavit of the petitioners or their legal counsel attesting, in detail, to all efforts to determine the identity and whereabouts of the parties against whom substituted service is sought.

The issue of whether a name and address are reasonably ascertainable, or can be found with diligent inquiry, "is a question of fact and must be determined upon trial." *Freeman*, 926 S.W.2d at 250. The strangely identical affidavits of Lindee Vaught [7] and Janet Morris are more concerned with keeping the birth mother's name out of the notice than with detailing their efforts to identify the unknown father. The only information about identifying the father is contained in paragraphs 5 and 11 of both affidavits. Each paragraph 5 states: "The birth mother did not know who the father of the child was and simply stated that she was at a party in Jackson, Tennessee when [the conception] occurred." This statement is classic hearsay [8] and is not admissible. Tenn. R. Evid. 802. Each paragraph 11 states: "This agency has no other source to seek the identity of this father."

The trial court specifically found that, "[T]he Adoption Place has made reasonable efforts to ascertain the identity of the father from the minor mother," but made no findings as to the evidence supporting this conclusion. Actions taken to achieve service of process in these cases should not be merely perfunctory. *In re C.L.M.*, No. M2004–02922–COA–R3–PT, 2006 WL 842917, *5 (Tenn.Ct.App. March 30, 2006) (no Tenn. R.App. P. 11 application filed). Simply asking the birth mother if she knows the name of the father and then giving up is not sufficient.[9] Given the woeful absence of information regarding the steps taken to identify the father provided in these affidavits and the record, this Court must conclude on this record that the preponderance of the evidence shows The Adoption Place did not carry its burden of demonstrating the "diligent inquiry" [10] required by Tenn.Code Ann. § 21–1–203(a) in order to use service by publication.[11]

address, the court may order service by publication in accordance with Tenn.Code Ann. §§ 21–1–203 and 204.

6. The words "these proceedings" in Tenn. Code Ann. § 36–1–117(m)(3) refer to the adoption and termination proceedings in chancery and circuit courts referenced in subsection (m)(1) and to the termination proceedings held in juvenile courts referenced in subsection (m)(2).

7. Notarized by Janet L. Morris.

8. Tennessee Rule of Evidence 801(c) defines "hearsay" as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

9. The interrogatories filed by the attorney for the unknown father contain other inquiries that could potentially lead to the identity of the unknown father.

10. What would constitute a diligent inquiry will depend on the circumstances of each case. One could assume that the location of the party, the name of the host of the party, the names of attendees of the party, and the type of vehicle in which the child was conceived would all be obvious areas of inquiry.

11. We would note that during the testimony of Janet Morris, after the publication of the notice, the petitioner attempted to have Ms. Morris testify that the birth mother could not identify the school the father attended. The father's attorney objected based on hearsay,

Since the requirement for service by publication was not met, the unknown father was not before the court, and all proceedings held pursuant to the notice were void.[12] *Overby v. Overby*, 224 Tenn. 523, 525, 457 S.W.2d 851, 852 (1970). Because the other issues raised in this matter are capable of repetition in any further proceedings held in the court below as a result of this decision, we will address these issues in the interest of judicial economy and to aid the parties and the trial court. *Conley v. Life Care Centers of America, Inc.*, 236 S.W.3d 713 (Tenn.Ct. App.2007).

We agree with the trial judge that the mother's name need not appear if sufficient details are provided in the notice itself. It is apparent that, if the threshold requirement of Tenn.Code Ann. § 21–1–203(a) is met—that the name of the defendant or his residence cannot be ascertained after diligent inquiry—then, assuming appropriate proof of the facts, the notice published in the West Tennessee Examiner satisfies the statutes. There is no statutory requirement that the name of the birth mother appear in the notice. She was not a party to this proceeding. The notice contained the names of the parties (albeit not the actual names of the mother and father), the location of the court, the nature of the lawsuit, and significant details of the circumstances giving rise to the notice. The record, however, lacks proof regarding not only the county of conception,[13] but also the physical descriptions of the parents and the fact that conception occurred in a vehicle.[14]

If there was evidence in the record that proved the statements in the notice, we would also find that the notice satisfied due process requirements due to the specific details it contained. This Court has previously observed that:

Due process requires plaintiffs to give defendants notice that is reasonably calculated, under all the circumstances, to inform the defendants of the pending

---

and the objection was sustained. It may very well be that the petitioner was very diligent in its inquiry, but that does not relieve petitioner of the obligation of demonstrating that diligence with competent evidence.

12. An argument could be fashioned that the faulty service was waived. As this Court observed in *In re C.L.M.*, 2006 WL 842917, at *10:

[I]t is incumbent upon the person challenging the sufficiency of process to raise its challenge at the first opportunity in a motion to dismiss. It is likewise possible for a defendant, by failing to file such a motion and making a formal appearance on the record, to thereby waive any right to challenge the mode of service regardless of the inherent due process concerns.

It is apparent that the attorney for the unknown father raised due process concerns about this notice repeatedly throughout these proceedings. On this scant record, we are unwilling to find the unknown father waived this important right based on his attorney's

apparent failure to put these due process concerns in a motion.

13. When the attorney for the unknown father raised this lack of proof in the April 9, 2007 hearing, the Guardian Ad Litem indicated that she believed the birth mother stated where the child was conceived under oath in the surrender proceeding. The record does not contain the surrender documents or a transcript of the surrender hearing. The trial court did examine the surrender documents, but, according to the March 29, 2007 order, only "to determine whether or not Jane Doe knew the identity of the Respondent/unknown father in this matter," not to determine the location or details of conception.

14. Ms. Morris did testify that the information in the notice was correct to the best of her knowledge. She would not, however, have had first hand knowledge of the details of the child's conception since she testified she first heard from the birth mother around the end of March, 2006.

action ... As the United States Supreme Court has made clear: "the means employed [to give notice] must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it."

*In re Z.J.S. and M.J.P.*, No. M2002–02235–COA–R3–JV, 2003 WL 21266854, *19–20 (Tenn.Ct.App. June 3, 2003) (no Tenn. R.App. P. 11 application filed) (citations omitted).

### DENIAL OF DISCOVERY

■■■■ The attorney for the unknown father sought information through discovery that might lead to the identity of the father, such as the name of the mother, the birth father's name, age, race, high school attended, type of car, any friends or individuals who attended the party and the address of the party. The Court granted the protective orders sought by the birth mother and The Adoption Place, which exempted them from responding to the interrogatories and requests for production filed by the attorney for the unknown father.

■■■■ The granting or denying of a protective order relative to discovery rests within the sound discretion of the trial court. *Summers v. Cherokee Children's & Family Servs. Inc.*, 112 S.W.3d 486, 530 (Tenn.Ct.App.2002). Such a discretionary decision is reviewed for abuse of discretion and the burden of establishing abuse of discretion is on the party seeking to overturn the trial court's ruling on appeal. *Summers*, 112 S.W.3d at 530.

> Under the abuse of discretion standard, a trial court's ruling "will be upheld so long as reasonable minds can disagree as to the propriety of the decision made." A trial court abuses its discretion only when it "applies an incorrect legal standard, or reaches a decision which is against logic or reasoning that

causes an injustice to the party complaining." The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court.

*Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn.2001) (citations omitted). The correct standard to be applied in ruling on a motion for protective order is found in Rule 26.03 of the Tennessee Rules of Civil Procedure, which provides in pertinent part:

> Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....

The trial court examined the surrender hearing records in camera and determined that the birth mother had, while under oath, testified that she did not know the identity of the father. There is nothing in the record before us to indicate that the trial court did not apply the appropriate standard. The Court was attempting to protect the birth mother from embarrassment. Yet, the breadth of the protective order enables the birth mother and The Adoption Place to avoid answering all questions, even those not aimed at discovering the birth mother's identity. The effect of this order is to prevent the attorney for the unknown father from gaining access to information that could help him identify the father and formulate a defense to the termination petition. This is such an injury to the unknown father's interests that we feel compelled to find that the trial judge erred by granting such a broad protective order. It should be possible to craft an order that will protect the birth mother's identity while still allowing an

avenue for the unknown father's attorney to seek appropriate information.

### CLEAR AND CONVINCING EVIDENCE

■■■■ A party seeking to terminate parental rights must first prove the existence of grounds for termination. Tenn. Code Ann. § 36–1–113(c)(1). Then, it must be proven that it is in the child's best interest to terminate the parent's rights. Tenn.Code Ann. § 36–1–113(c)(2). Since the decision to terminate parental rights affects fundamental constitutional rights, both of these requirements must be proven by clear and convincing evidence. *In re R.M.S.*, 223 S.W.3d 240, 264 (Tenn.Ct.App. 2006). "Clear and convincing evidence is 'evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn by the evidence.'" *In re R.M.S.*, 223 S.W.3d at 264 (quoting *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). "In reviewing a case involving the termination of parental rights, we first determine whether the trial court's findings of fact are supported by a preponderance of the evidence. We must then determine whether the combined weight of these facts provides clear and convincing evidence supporting the trial court's ultimate factual conclusion." *In re R.M.S.*, 223 S.W.3d at 265 (citations omitted).

■■■■ In termination cases, "[t]he court shall enter an order which makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." Tenn.Code Ann. § 36–1–113(k). "Thus, trial courts must prepare and file written findings of fact and conclusions law with regard to every disposition of a petition to terminate parental rights, whether they have been requested or not." *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524 *3 (Tenn.Ct.App. November 25, 2003) (no Tenn. R.App. P. 11 application filed). When a trial court has not complied with this statute, this Court cannot review the record de novo. *In re Adoption of Muir*, 2003 WL 22794524, at *3. It must vacate and remand for the preparation of written findings of fact and conclusions of law. *In re Adoption of Muir*, 2003 WL 22794524, at *3.

■■■■ In this case, the trial court has made no specific findings of fact [15] to support its conclusions regarding willful abandonment and the best interest of the child. The case must be remanded for the entry of specific findings of fact and conclusions of law as required by Tenn.Code Ann. § 36–1–113(k).

We vacate the May 4, 2007 order and remand the case to the trial court for further proceedings consistent with this opinion. Costs of appeal are assessed against The Adoption Place, for which execution, if necessary, may issue.

---

**15.** The trial court found that "the Petition is well taken." It also found that the unknown father had been served by publication, which met due process requirements, and that no one claiming to be the father of this child registered with the Putative Father Registry. The record before this Court reveals few facts upon which to base any findings.