IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 15, 2022

**IN RE KAILEY A. ET AL.**

**Appeal from the Juvenile Court for Greene County**
**No. 21J29523          Kenneth N. Bailey, Jr., Judge**

———————————————————

**No. E2021-00801-COA-R3-PT**

———————————————————

This appeal involves the parental rights of a mother, Mary K. ("Mother"), to her minor children, Kailey A., Abigail K., Isaiah K., and Izzabella K. (collectively, "the Children"). The Tennessee Department of Children's Services ("DCS") filed a petition to terminate Mother's parental rights on the statutory ground of severe child abuse committed against the Children. The Greene County Juvenile Court ("the Juvenile Court") found by clear and convincing evidence that Mother had severely abused the Children and that it was in the Children's best interest for Mother's parental rights to be terminated. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which JOHN W. MCCLARTY and W. NEAL MCBRAYER, JJ., joined.

T. Hunter Shelton, Greeneville, Tennessee, for the appellant, Mary K.

Herbert H. Slatery, III, Attorney General and Reporter, and Kathryn A. Baker, Senior Assistant Attorney General, for the appellee, the Tennessee Department of Children's Services.

# OPINION

## Background

DCS received a referral alleging drug exposure and sexual abuse concerning the Children. The Children lived with Mother and the Children's father, Billy K. ("Father"). The assigned case manager, Crystal Gibson, attempted to contact the family on several occasions but received no response. Ms. Gibson subsequently went to the home and observed the home in a deplorable condition. Ms. Gibson explained that the home had a strong odor that "was enough to knock you down"; that dog feces, trash, and other items were throughout the home; that dishes were scattered in the kitchen; that the toilet was inoperable because it had rice and other objects in it; and that the floor of the home was subflooring. Ms. Gibson testified that at one point, a paper bag shifted and Father told her not to worry because it was "probably just a rat." Ms. Gibson described roaches on the ceilings and throughout the home. Isaiah and Izzabella were present in the home, but Kailey and Abigail were not present at the time. Based on the condition of the home, the Children were removed due to safety concerns in January 2021. Mother was arrested at that time due to an outstanding warrant for her arrest. Tabitha Fulwiler testified that there had been an attachment for Mother that resulted in her arrest because some of the Children were truant prior to entering foster care. Ms. Gibson testified that Kailey had missed 22 days of school and Abigail had missed 52 days.

Following removal of the Children from the parents' home, the Children were given hair follicle drug screens. The two oldest children, Kailey and Abigail, tested negative for all substances. The two youngest children, Isaiah and Izzabella, both tested positive for methamphetamine. With a confirmation cutoff of 100 pg/mg, the drug screen results reflect that Isaiah's sample contained methamphetamine in the amount of 285 pg/mg and Izzabella's sample contained methamphetamine in the amount of 1,294 pg/mg.

DCS filed a petition to terminate Mother's parental rights in March 2021, alleging that Mother had severely abused the Children and that termination of Mother's parental rights was in the Children's best interest.[1] The Juvenile Court conducted a trial in June 2021, in which the following witnesses testified: (1) Crystal Gibson, DCS case manager; (2) Dana A., the Children's foster parent; (3) Tabitha Fulwiler, DCS foster care worker; (4) Mother; and (5) Father.

---

[1] The termination petition also sought to terminate Father's parental rights to the Children. Father's rights were terminated during the juvenile court proceedings, and he appealed to this Court. However, Father died unexpectedly during the pendency of the appeal. Father's counsel subsequently requested voluntary dismissal of Father's appeal. This Court granted the voluntary dismissal of Father's appeal via order entered in September 2021.

The two oldest children, Kailey and Abigail, participated in forensic interviews conducted by the Child Advocacy Center (CAC). Ms. Gibson was present during those interviews and testified to the disclosures made by Kailey and Abigail. The forensic interviews were admitted into evidence at trial. Kailey and Abigail both disclosed incidents where a man named "Dave" had committed physical acts of sexual abuse to both Kailey and Abigail on multiple occasions. The man named "Dave" to whom the girls referred is Dave C., an over the road truck driver. Abigail described Dave C. as a cousin, and Kailey called him an uncle. Kailey explained that they often called him an uncle but that Dave was actually Father's cousin. During their forensic interviews, both girls described multiple incidents of sexual abuse by Dave C. that occurred while they were on trips with Dave. Kailey also disclosed that Dave had come into her room once while she was at the parents' home. Abigail disclosed that she had observed Dave sexually abusing Kailey while on the truck. Additionally, Kailey stated that she had observed Dave sexually abusing Abigail during one of the trips.

Abigail stated that her Mother and Father knew she and her sister were on these trips with Dave but denied that the parents knew about the abuse. However, Kailey stated that she had told her parents about what Dave had done to Abigail and that she and Abigail were not allowed to be around Dave for at least a year after that. However, Dave told her that he then paid the parents $40, and the girls were allowed to take another trip with Dave. During their last trip with Dave, Kailey sent a text message to Father telling him that Dave was attempting to abuse them. Father told Kailey to get in the back of the truck with Abigail and stay quiet. Father kept in touch with Kailey until they returned to Tennessee. The Children were removed from the parents' custody and placed into foster care upon their return. During her forensic interview, Abigail also disclosed that she had observed her parents smoking something out of a bowl and that they had sniffed things up their noses. Abigail also made disclosures of sexual abuse by her grandfather, who had since passed away.

After these forensic interviews were completed, DCS received a second referral alleging sexual abuse against a second individual, D.M., who was Father's best friend and had helped pay the family's bills. Ms. Gibson interviewed both Abigail and Kailey about the new allegations. Ms. Gibson testified that Abigail and Kailey made statements to her about drug use and domestic violence in the home. Kailey disclosed sexual abuse by the second man, D.M. She stated that the parents did not know about the sexual abuse by D.M. Kailey said that she was sometimes alone with D.M. and sometimes Abigail was present. Abigail confirmed to Ms. Gibson that D.M. had locked the door while Kailey was inside his room and she was unable to get inside to her sister. Kailey stated that D.M. had shown her and Abigail pornography. Ms. Gibson stated that Abigail told her that D.M. smoked "weed" with the parents out of a bowl. Ms. Gibson further testified that Kailey told her that the parents smoked a white substance that she described as "crystally." Kailey explained to Ms. Gibson that they put the substance in a bowl with a small hole on top and

melt the white substance in it. Kailey stated that it was like a "water bong" with water in the bottom of the bowl and that they would add "Kool-Aid" to the bottom to change the color of the water. According to Kailey, the parents smoked the white substance and it had no smell.

Ms. Gibson further testified that Abigail disclosed to her that Father "smacks and pushes" Mother. Kailey said that Father threw Mother's phone and busted the back windshield of the vehicle. Kailey told Ms. Gibson that Mother had thrown a plate at her aunt and that her dad punched a closet door. Kailey said that she and Abigail keep the smaller siblings out of the way to protect them during the parents' fights.

The Children's foster parent, Dana A. ("Foster Mother"), also testified. The Children had been in her home for approximately five months and had disclosed to her allegations of sexual abuse that had happened to them while living with the parents. She testified that the Children are doing well in her home but that Kailey had been having behavioral issues and Abigail had struggled emotionally. Both Kailey and Abigail are seeing a therapist, which has resulted in improvement. Foster Mother testified that the children have stated that they love their parents but expressed that "they do not matter to the parents." The Children had asked her to see the parents at the beginning but no longer requested to see them.

Tabitha Fulwiler, the DCS foster care worker, testified that Abigail, Izzabella, and Isaiah are thriving in the foster home but that Kailey had behavioral issues and was "working through her trauma." She had drug screened the parents during the case, and Mother had passed some drugs screens and was able to have some visitation with the Children. However, Mother's visitation was suspended after she failed a drug test for methamphetamine in March. Mother also tested positive for methamphetamine on a subsequent drug screen in April. She testified that she had been unable to reach the parents recently to do a home visit.

Mother testified that she had no knowledge that Abigail and Kailey had been sexually assaulted. Mother's attorney advised Mother to assert her Fifth Amendment privilege against self-incrimination, and Mother gave no further explanation regarding her knowledge of the assault. In response to questions by DCS regarding why she sent the children on trips with Dave, whether she used methamphetamine around the two youngest children, and whether she was accepting payment from D.M. in exchange for sexual favors from Kailey, Mother's attorney recommended that Mother assert her Fifth Amendment privilege against self-incrimination, and Mother did not answer the questions. DCS requested that the Juvenile Court draw a negative inference based on Mother's assertion of her Fifth Amendment right.

In July 2021, the Juvenile Court entered an order making the following findings of fact:

From the testimony of witnesses, the exhibits entered into evidence, and the record as a whole, the Court finds and so rules that the State has proven by clear and convincing evidence the following facts:

DCS, in this case, received a referral for drug exposure and sex abuse and attempted to make contact with the family but was unable to do so. Contact was delayed due to the family being unwilling to answer the door for two or three weeks. Upon making contact with the family and entering the home[,] DCS found the home to be in deplorable condition. The pictures speak a thousand words. The condition of the home was horrible. There was feces through the home and the home was unfit for any child to reside in and that was just the tip of the iceberg. Other conditions in the home include the parents' drug use as two of the children were exposed to methamphetamine and one of the children's levels were off the charts. They were obviously exposed to methamphetamine in the home as a picture showed a plate with a white substance on it which was found in the home. The Court finds that while only two children tested positive for illegal substances on hair follicle drug screens[,] all four of the children were adversely affected by the substances used by the parents. The Court finds that the children are victims of severe abuse by clear and convincing evidence due to the methamphetamine use of the parents as two children [were] exposed and tested positive for methamphetamine. However, the drug use negatively impacted all four children despite the two oldest children not testing positive for any substances. The two older children were negatively impacted by the drug exposure of the younger two children.

The Court finds with respect to the older two children the parents knew or should have known that the older two children were being inappropriately touched and sexually assaulted by two men, one of whom was a family friend and one of whom was either an uncle or a cousin to the children. Whatever his relationship to the children was[,] his actions toward the older two children was inappropriate. . . . The parents knew or should have known that this was occurring at the hands of these two other adults to these two oldest children.

The Court having established that the ground of severe abuse has been proven by clear and convincing evidence as to all four children turns to the best interest factors in this matter. The Court finds that these children were subjected to traumatic events which will take years of therapy for them to

- 5 -

understand what occurred to them and around them and the parents are not capable of helping them work through the trauma as they failed to protect them from the trauma.

The Court finds by clear and convincing evidence that the parental rights of [Mother and Father] are terminated and it is in the best interest of the children that the rights of the parents be terminated because the children need a safe and stable home and structure. The Court finds that these children were not in school and were allowed to go with an over the road truck driver and miss school. The Court finds that there are multiple issues which support the termination of parental rights in this case. The Court, therefore, terminates the rights of [Mother and Father] to the minor children.

As to the ground of severe child abuse, the Juvenile Court found that Mother had committed severe child abuse against all four of the Children. The Juvenile Court found that hair samples were collected from the Children and that "Izzabella [K.] and Isaiah [K.] were both positive for methamphetamine." The Juvenile Court further found that both Kailey and Abigail had completed forensic interviews with the CAC and had disclosed sexual abuse by David C. The Juvenile Court found as follows concerning Kailey in pertinent part:

Kailey [A.] completed a forensic interview at the CAC and disclosed that she was sexually abused by her cousin, David [C.], which occurred at her home in Afton, Tennessee and in multiple other states as he is a truck driver and she would frequently ride with him. She also disclosed that her sister Abigail [K.] was sexually abused. Kailey disclosed that she told her parents when she was 10 about the abuse and it stopped because they stopped allowing her to go on trips with him. Kailey stated that when she was 11 David [C.] offered her parents $40 and the trips and sexual abuse resumed.

The Juvenile Court also found that Kailey had disclosed during her interview that she had observed her parents using illegal drugs. Based on the foregoing evidence, the Juvenile Court found that DCS had proven by clear and convincing evidence that Mother had committed severe child abuse against the Children.

Concerning the best interest analysis, the Juvenile Court found as follows:

The Court finds that, after having found that grounds exist to terminate the parental rights of a Respondent, the Court must then analyze whether or not it is in the child's best interest for termination to be granted. The Court further finds that the nonexclusive list of best interest factors

which the Court must consider are contained in Tennessee Code Annotated § 36-1-113(i).

1. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(1) is not applicable in this matter and does not weigh in favor of, or against, termination.

2. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(2) is not applicable in this matter and does not weigh in favor of, or against, termination.

3. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(3) is not applicable in this matter and does not weigh in favor of, or against, termination.

4. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(4) is not applicable in this matter and does not weigh in favor of, or against, termination.

5. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(5) is not applicable in this matter and does not weigh in favor of, or against, termination.

6. The Court finds that the best interest factor contained in . . . T.C.A. § 36-1-113(i)(6) is applicable in this matter. Thus, the Court finds that it is in the children's best interests for termination to be granted as to [Mother and Father], in that they have abused and neglected these children. Thus, the Court finds that this factor weighs in favor of terminating the [Mother's and Father's] parental rights.

7. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(7) is applicable in this matter. Thus, the Court finds that that it is in the children's best interest for termination to be granted as to [Mother and Father], because they abuse illegal substances, rendering them consistently unable to care for the children in a safe and stable manner. Thus, the Court finds that this factor weighs in favor of terminating the [Mother's and Father's] parental rights.

8. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(7) is applicable in this matter. Thus, the Court finds that that it is in the children's best interest for termination to be granted as to the Respondents, because the physical environment of their home is not healthy

and safe. Thus, the Court finds that this factor weighs in favor of terminating [Mother's and Father's] parental rights.

9. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(7) is applicable in this matter. Thus, the Court finds that . . . it is in the children's best interest for termination to be granted as to [Mother and Father], because there is crime in their home. Thus, the Court finds that this factor weighs in favor of terminating [Mother's and Father's] parental rights.

10. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(8) is not applicable in this matter and does not weigh in favor of, or against, termination.

11. The Court finds that the best interest factor contained in T.C.A. § 36-1-113(i)(9) is not applicable in this matter and does not weigh in favor of, or against, termination.

12. Though not listed as one of the nonexclusive enumerated factors in T.C.A. § 36-1-113(i), the Court finds that these children were subjected to traumatic events which will take years of therapy to overcome because of what occurred to them and around them and the parents are not capable of helping them through this process. This is also a factor that is applicable in this matter and weighs in favor of termination in this cause, to wit: the children were exposed to illegal drugs which the parents were using and the parents allowed two of the children to travel with an over the road truck drive[r] who was touching them and taking pictures of them inappropriately and they were missing school. The parents also allowed the oldest child to be raped by a family friend on at least two occasions that the child [h]as disclosed thus far.

* * *

Having evaluated all of the relevant best interest factors found in T.C.A. § 36-1-113(i), there is clear and convincing evidence that it is in the best interest of the minor children for the parental rights of [Mother and Father] to be forever terminated.

1. From the exhibits entered into evidence, the testimony of the witnesses, and the record as a whole, the Court finds and so rules that DCS has proven by clear and convincing evidence, pursuant to T.C.A. § 36-1-113(i)(6) [Mother and Father] have severely abused these children. The

Court is, therefore, of the opinion and so holds the State has established, by clear and convincing evidence, it is in the best interests of the children, Kailey [A.], Abigail [K.], Izzabella [K.] and Isaiah [K.], to terminate the parental rights of [Mother and Father] due to brutality, physical, sexual, emotional or psychological abuse or neglect toward the children or another child or adult in the family or household pursuant to T.C.A. § 36-1-113(i)(6).

2. From the exhibits entered into evidence, the testimony of the witnesses, and the record as a whole, the Court finds and so rules DCS has proven by clear and convincing evidence, pursuant to T.C.A. § 36-1-113(1)(7) [Mother and Father] are consistently unable to care for the children in a safe and stable manner due to continued alcohol and drug use, the condition of the home, and crime in the home. The Court is, therefore, of the opinion and so holds the State has established, by clear and convincing evidence, it is in the best interests of the children, Kailey [A.], Abigail [K.], Izzabella [K.] and Isaiah [K.], to terminate the parental rights of [Mother and Father] for the inability to provide consistent care for the children in a safe and stable manner due to alcohol and drug use, condition of the home, and crime in the home pursuant to T.C.A. § 36-1-113(i)(7).

Mother timely appealed to this Court.

## **Discussion**

Although not stated exactly as such, Mother raises the following issues for our review on appeal: (1) whether the Juvenile Court erred in finding by clear and convincing evidence that Mother committed severe child abuse against the Children, (2) whether the Juvenile Court erred in finding by clear and convincing evidence that termination of Mother's parental rights was in the Children's best interest, and (3) any other issues this Court sees fit to review pursuant to the Tennessee Supreme Court's holding in *In re Carrington H.*, 483 S.W.3d 507 (Tenn. 2016).

As our Supreme Court has instructed regarding the standard of review in parental rights termination cases:

A parent's right to the care and custody of her child is among the oldest of the judicially recognized fundamental liberty interests protected by the Due Process Clauses of the federal and state constitutions.[2] *Troxel v.*

---

[2] U.S. Const. amend. XIV § 1 ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."). Similarly, article 1, section 8 of the Tennessee Constitution states "[t]hat no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled,

*Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In re Angela E.*, 303 S.W.3d 240, 250 (Tenn. 2010); *In re Adoption of Female Child*, 896 S.W.2d 546, 547-48 (Tenn. 1995); *Hawk v. Hawk*, 855 S.W.2d 573, 578-79 (Tenn. 1993). But parental rights, although fundamental and constitutionally protected, are not absolute. *In re Angela E.*, 303 S.W.3d at 250. "'[T]he [S]tate as *parens patriae* has a special duty to protect minors . . . .' Tennessee law, thus, upholds the [S]tate's authority as *parens patriae* when interference with parenting is necessary to prevent serious harm to a child." *Hawk*, 855 S.W.2d at 580 (quoting *In re Hamilton*, 657 S.W.2d 425, 429 (Tenn. Ct. App. 1983)); *see also Santosky v. Kramer*, 455 U.S. 745, 747, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *In re Angela E.*, 303 S.W.3d at 250. "When the State initiates a parental rights termination proceeding, it seeks not merely to infringe that fundamental liberty interest, but to end it." *Santosky*, 455 U.S. at 759, 102 S.Ct. 1388. "Few consequences of judicial action are so grave as the severance of natural family ties." *Id.* at 787, 102 S.Ct. 1388; *see also M.L.B. v. S.L.J.*, 519 U.S. 102, 119, 117 S.Ct. 555, 136 L.Ed.2d 473 (1996). The parental rights at stake are "far more precious than any property right." *Santosky*, 455 U.S. at 758-59, 102 S.Ct. 1388. Termination of parental rights has the legal effect of reducing the parent to the role of a complete stranger and of "severing forever all legal rights and obligations of the parent or guardian of the child." Tenn. Code Ann. § 36-1-113(*l*)(1); *see also Santosky*, 455 U.S. at 759, 102 S.Ct. 1388 (recognizing that a decision terminating parental rights is "*final* and irrevocable"). In light of the interests and consequences at stake, parents are constitutionally entitled to "fundamentally fair procedures" in termination proceedings. *Santosky*, 455 U.S. at 754, 102 S.Ct. 1388; *see also Lassiter v. Dep't of Soc. Servs. of Durham Cnty., N.C.*, 452 U.S. 18, 27, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981) (discussing the due process right of parents to fundamentally fair procedures).

Among the constitutionally mandated "fundamentally fair procedures" is a heightened standard of proof – clear and convincing evidence. *Santosky*, 455 U.S. at 769, 102 S.Ct. 1388. This standard minimizes the risk of unnecessary or erroneous governmental interference with fundamental parental rights. *Id.*; *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). "Clear and convincing evidence enables the fact-finder to form a firm belief or conviction regarding the truth of the facts, and eliminates any serious or substantial doubt about the correctness of these factual findings." *In re Bernard T.*, 319 S.W.3d at 596 (citations omitted).

___

or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land."

The clear-and-convincing-evidence standard ensures that the facts are established as highly probable, rather than as simply more probable than not. *In re Audrey S.*, 182 S.W.3d 838, 861 (Tenn. Ct. App. 2005); *In re M.A.R.*, 183 S.W.3d 652, 660 (Tenn. Ct. App. 2005).

Tennessee statutes governing parental termination proceedings incorporate this constitutionally mandated standard of proof. Tennessee Code Annotated section 36-1-113(c) provides:

> Termination of parental or guardianship rights must be based upon:
>
> (1) A finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and
> (2) That termination of the parent's or guardian's rights is in the best interests of the child.

This statute requires the State to establish by clear and convincing proof that at least one of the enumerated statutory grounds[3] for termination exists and that termination is in the child's best interests. *In re Angela E.*, 303 S.W.3d at 250; *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002). "The best interests analysis is separate from and subsequent to the determination that there is clear and convincing evidence of grounds for termination." *In re Angela E.*, 303 S.W.3d at 254. Although several factors relevant to the best interests analysis are statutorily enumerated,[4] the list is illustrative, not exclusive. The parties are free to offer proof of other relevant factors. *In re Audrey S.*, 182 S.W.3d at 878. The trial court must then determine whether the combined weight of the facts "amount[s] to clear and convincing evidence that termination is in the child's best interest." *In re Kaliyah S.*, 455 S.W.3d 533, 555 (Tenn. 2015). These requirements ensure that each parent receives the constitutionally required "individualized determination that a parent is either unfit or will cause substantial harm to his or her child before the fundamental right to the care and custody of the child can be taken away." *In re Swanson*, 2 S.W.3d 180, 188 (Tenn. 1999).

Furthermore, other statutes impose certain requirements upon trial courts hearing termination petitions. A trial court must "ensure that the hearing on the petition takes place within six (6) months of the date that the

---

[3] Tenn. Code Ann. § 36-1-113(g)(1)-(13).
[4] Tenn. Code Ann. § 36-1-113(i).

petition is filed, unless the court determines an extension is in the best interests of the child." Tenn. Code Ann. § 36-1-113(k). A trial court must "enter an order that makes specific findings of fact and conclusions of law within thirty (30) days of the conclusion of the hearing." *Id*. This portion of the statute requires a trial court to make "findings of fact and conclusions of law as to whether clear and convincing evidence establishes the existence of each of the grounds asserted for terminating [parental] rights." *In re Angela E.*, 303 S.W.3d at 255. "Should the trial court conclude that clear and convincing evidence of ground(s) for termination does exist, then the trial court must also make a written finding whether clear and convincing evidence establishes that termination of [parental] rights is in the [child's] best interests." *Id*. If the trial court's best interests analysis "is based on additional factual findings besides the ones made in conjunction with the grounds for termination, the trial court must also include these findings in the written order." *Id*. Appellate courts "may not conduct de novo review of the termination decision in the absence of such findings." *Id*. (citing *Adoption Place, Inc. v. Doe*, 273 S.W.3d 142, 151 & n.15 (Tenn. Ct. App. 2007)).

### B. Standards of Appellate Review

An appellate court reviews a trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Bernard T.*, 319 S.W.3d at 596; *In re Angela E.*, 303 S.W.3d at 246. Under Rule 13(d), appellate courts review factual findings de novo on the record and accord these findings a presumption of correctness unless the evidence preponderates otherwise. *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009); *In re Adoption of A.M.H.*, 215 S.W.3d 793, 809 (Tenn. 2007). In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights. *In re Bernard T.*, 319 S.W.3d at 596-97. The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which appellate courts review de novo with no presumption of correctness. *In re M.L.P.*, 281 S.W.3d at 393 (quoting *In re Adoption of A.M.H.*, 215 S.W.3d at 810). Additionally, all other questions of law in parental termination appeals, as in other appeals, are reviewed de novo with no presumption of correctness. *In re Angela E.*, 303 S.W.3d at 246.

*In re Carrington H.*, 483 S.W.3d at 521-24 (footnotes in original but renumbered). In combination with a best interest finding, clear and convincing evidence supporting any

single ground will justify a termination order. *E.g., In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

We first address the statutory ground found by the Juvenile Court in terminating Mother's parental rights. Tennessee Code Annotated § 36-1-113(g)(4) (2021) includes severe child abuse as a ground for the termination of a parent's parental rights. The version of Tennessee Code Annotated § 37-1-102(b)(27) that was in effect at the time the petition was filed defined severe child abuse as follows:

(A)(i) The knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death and the knowing use of force on a child that is likely to cause serious bodily injury or death;
(ii) "Serious bodily injury" shall have the same meaning given in § 39-15-402(c);

* * *

(C) The commission of any act towards the child prohibited by § 39-13-309, §§ 39-13-502 -- 39-13-504, § 39-13-515, § 39-13-522, § 39-13-527, § 39-13-531, § 39-13-532, § 39-15-302, § 39-15-402, or § 39-17-1005 or the knowing failure to protect the child from the commission of any such act towards the child; [or]

* * *

(E) Knowingly or with gross negligence allowing a child under eight (8) years of age to ingest an illegal substance or a controlled substance that results in the child testing positive on a drug screen, except as legally prescribed to the child[.]

Tenn. Code Ann. § 37-1-102(b)(27) (West July 1, 2019 to May 24, 2021).

The Juvenile Court did not specify which subsection it was applying when determining that Mother committed severe child abuse. However, based on the evidence against Mother concerning the children, Kailey and Abigail, subsection (C) is applicable. Based on the evidence, it appears Abigail was eight years old or younger, and Kailey was older than eight years old but younger than thirteen years old when the abuse occurred. Based on the disclosures of sexual abuse to Kailey and Abigail, Dave C. had committed acts to children that violated Tennessee Code Annotated § 39-13-504 (prohibiting aggravated sexual battery) as to both Kailey and Abigail, § 39-13-522 (prohibiting rape of a child) as to Kailey, and § 39-13-531 (prohibiting aggravated rape of a child) as to Abigail.

- 13 -

On appeal, Mother does not contest the allegations that the sexual abuse happened to Abigail and Kailey by Dave C. Mother, however, argues that she had no knowledge of the sexual abuse that occurred.

In the context of severe child abuse, the words "knowing" and "knowingly," which are included in the statutory definitions of severe child abuse, "'do not have fixed or uniform meanings,' and '[t]heir meanings in particular cases vary depending on the context in which they are used or the character of the conduct at issue.'" *In re Samaria S.*, 347 S.W.3d 188, 206 (Tenn. Ct. App. 2011) (quoting *In re R.C.P.*, No. M2003-01143-COA-R3-PT, 2004 WL 1567122, at *7 (Tenn. Ct. App. July 13, 2004)). As relevant to severe child abuse, this Court has explained that a parent's conduct is considered to be knowing and his or her actions or failure to act are knowingly "when he or she has actual knowledge of the relevant facts and circumstances or when he or she is either in deliberate ignorance of or in reckless disregard of the information that has been presented to him or her." *In re Samaria S.*, 347 S.W.3d at 206 (quoting *In re Caleb J.B.W.,* No. E2009-01996-COA-R3-PT, 2010 WL 2787848, at *5 (Tenn. Ct. App. July 14, 2010)) (other internal citations omitted).

The Juvenile Court found that Mother knew or should have known of the sexual abuse by Dave C. and that she failed to protect Kailey and Abigail from continued abuse. Kailey stated that the parents knew of the abuse toward Abigail because she had told them. After Kailey's telling the parents of the abuse Abigail suffered, the parents would not let Abigail and Kailey go on road trips with Dave C. for at least a year. According to Kailey, Dave C. then paid the parents $40, and the parents allowed both Kailey and Abigail to go on another road trip with Dave C. As to this trip, Kailey disclosed that Dave C. had again attempted to sexually assault them. The evidence presented at trial supports the Juvenile Court's finding that Mother knew about the sexual assault against the children, Kailey and Abigail, and that she had failed to protect the children from the abuse by Dave C. Therefore, we affirm the Juvenile Court's finding by clear and convincing evidence that Mother severely abused Kailey and Abigail.

The Juvenile Court also found that Mother had severely abused the two youngest children, Isaiah and Izzabella. The Juvenile Court also did not specify a subsection under which it found Mother had severely abused Isaiah and Izzabella. However, subsections (A) and (E) are relevant to these allegations and the evidence. After the Children were removed from Mother's custody, Isaiah and Izzabella both tested positive for methamphetamine on a hair follicle drug screen. The drug test results were admitted as exhibits at trial and reflected that Isaiah's sample contained methamphetamine in the amount of 285 pg/mg and Izzabella's sample contained methamphetamine in the amount of 1,294 pg/mg. The Juvenile Court found that both Isaiah and Izzabella were exposed to methamphetamine and that Izzabella's level of methamphetamine in her system was "off

the charts." Based on their hair follicle drug screen results, it is clear that the children, Isaiah and Izzabella, were exposed to methamphetamine.

Tennessee Code Annotated § 37-1-102(b)(27)(A)(i) provides that a parent commits severe child abuse when his or her actions result in "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death . . . ." This Court has consistently interpreted this subsection to include a parent's knowing exposure of a child to drugs or his or her failure to protect the child from such exposure. *See In re A.L.H.*, No. M2016-01574-COA-R3-JV, 2017 WL 3822901, at *5 (Tenn. Ct. App. Aug. 31, 2017) ("This Court has repeatedly held that exposure of a child to drugs constitutes severe child abuse."). Citing to subsection (A)(i), this Court has stated that "[c]lear and convincing evidence of severe child abuse is present when a child is exposed to methamphetamine." *In re Caydan T.*, No. W2019-01436-COA-R3-PT, 2020 WL 1692300, at *5 (Tenn. Ct. App. Apr. 7, 2020).

In 2019, the General Assembly added subsection (E), which provided an additional definition of severe child abuse. *See* Tenn. Pub. Acts, Ch. 510, § 4 (H.B. 509). Subsection (E) provides that a parent commits severe child abuse when he or she "[k]nowingly or with gross negligence" allows a child under the age of eight to ingest an illegal or controlled substance not legally prescribed to the child, which results in the child testing positive for the substance on a drug screen. Tenn. Code Ann. § 37-1-102(b)(27) (West July 1, 2019 to May 24, 2021).

Both Isaiah and Izzabella were under the age of eight when they tested positive for methamphetamine. Mother argues on appeal that there was no evidence to support that she "knowingly engaged in the exposure of the minor children to methamphetamine." However, the Juvenile Court found that the two youngest children were "obviously exposed to methamphetamine" in the family home. The Juvenile Court found that a photograph of the parents' home contained a plate with a white substance on it and stated in its oral ruling that the substance appeared to be methamphetamine. The photograph was taken during the investigation that resulted in the Children being removed from the parents' custody. Additionally, both Kailey and Abigail disclosed that they observed the parents using drugs. Kailey described a white, "crystally" substance that the parents smoked from a bowl and how the parents would melt the white substance in the bowl. As Ms. Gibson testified, Isaiah and Izzabella tested positive for methamphetamine and these two children were spending most of their time with the parents. The evidence presented supports that Mother knowingly exposed Isaiah and Izzabella to methamphetamine while in the family home prior to their removal from the parent's custody. Although the Juvenile Court did not specify the specific definition to which it had relied, severe child abuse against Isaiah and Izzabella was proven as to both subsections (A) and (E). The evidence presented supports the Juvenile Court's finding by clear and convincing evidence that Mother committed severe abuse against Isaiah and Izzabella based on their exposure to

methamphetamine in the family home as shown by, among other things, their subsequent drug test results being positive for methamphetamine. We, therefore, affirm the Juvenile Court's finding by clear and convincing evidence that Mother severely abused Isaiah and Izzabella.

Finally, having determined that grounds exist for the termination of Mother's parental rights, we next address her argument concerning the best interest analysis. Mother argues that the Juvenile Court erred in finding by clear and convincing evidence that termination of her parental rights was in the Children's best interest. The version of Tennessee Code Annotated § 36-1-113(i) (Supp. 2020) that was in effect when the termination petition was filed provides a set of non-exclusive factors courts are to consider in determining whether termination of parental rights is in a child's best interest:

> (i)    In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1)    Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2)    Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3)    Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4)    Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5)    The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6)    Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;

(7)     Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8)     Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9)     Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

Tenn. Code Ann. § 36-1-113(i) (Supp. 2020).

With regard to making a determination concerning a child's best interest, our Supreme Court has instructed:

> When conducting the best interests analysis, courts must consider nine statutory factors listed in Tennessee Code Annotated section 36-1-113(i). These statutory factors are illustrative, not exclusive, and any party to the termination proceeding is free to offer proof of any other factor relevant to the best interests analysis. *In re Carrington H*., 483 S.W.3d at 523 (citing *In re Audrey S*., 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005)). Facts considered in the best interests analysis must be proven by "a preponderance of the evidence, not by clear and convincing evidence." *In re Kaliyah S*., 455 S.W.3d at 555 (citing *In re Audrey S*., 182 S.W.3d at 861). "After making the underlying factual findings, the trial court should then consider the combined weight of those facts to determine whether they amount to clear and convincing evidence that termination is in the child's best interest[s]." *Id*. When considering these statutory factors, courts must remember that "[t]he child's best interests [are] viewed from the child's, rather than the parent's, perspective." *In re Audrey S*., 182 S.W.3d at 878. Indeed, "[a] focus on the perspective of the child is the common theme" evident in all of the statutory factors. *Id*. "[W]hen the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child. . . ." Tenn. Code Ann. § 36-1-101(d) (2017).

Ascertaining a child's best interests involves more than a "rote examination" of the statutory factors. *In re Audrey S.*, 182 S.W.3d at 878. And the best interests analysis consists of more than tallying the number of statutory factors weighing in favor of or against termination. *White v. Moody*, 171 S.W.3d 187, 193-94 (Tenn. Ct. App. 2004). Rather, the facts and circumstances of each unique case dictate how weighty and relevant each statutory factor is in the context of the case. *See In re Audrey S.*, 182 S.W.3d at 878. Simply put, the best interests analysis is and must remain a factually intensive undertaking, so as to ensure that every parent receives individualized consideration before fundamental parental rights are terminated. *In re Carrington H.*, 483 S.W.3d at 523. "[D]epending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis." *In re Audrey S.*, 182 S.W.3d at 878 (citing *White v. Moody*, 171 S.W.3d at 194). But this does not mean that a court is relieved of the obligation of considering all the factors and all the proof. Even if the circumstances of a particular case ultimately result in the court ascribing more weight—even outcome determinative weight—to a particular statutory factor, the court must consider all of the statutory factors, as well as any other relevant proof any party offers.

*In re Gabriella D.*, 531 S.W.3d 662, 681-82 (Tenn. 2017).

In making its decision, the Juvenile Court considered the relevant statutory best interest factors that were in effect when the petition was filed when determining whether it was in the Children's best interest for Mother's parental rights to be terminated. The Juvenile Court considered Mother's actions that resulted in abuse and neglect to the Children. As the Juvenile Court found, the family home is not healthy and safe for the Children. The photos of the home when the Children were removed reflects a white substance, which the Juvenile Court noted had appeared to be methamphetamine. Two of the children ultimately tested positive for methamphetamine following removal from Mother's home, with one of the children having an extremely high level of methamphetamine in her system. The other two children were abused by men the parents allowed to be alone with the children. Even after learning of the sexual abuse by one of these men, the parents allowed Kailey and Abigail to be alone with that man in his truck. The Juvenile Court found that due to having been exposed to traumatic events, the Children would require years of therapy for them to overcome the abuse. The Juvenile Court found that the parents were not capable of helping the Children through that process. Additionally, both Kailey and Abigail were truant in school while in Mother's custody, with Kailey missing 22 days of school and Abigail missing 52 days of school.

The Juvenile Court further found that there was crime in the home and that Mother abused illegal substances, which rendered her consistently unable to care for the Children in a safe and stable manner. Mother has continued using drugs since the Children were removed from her custody. At one point, Mother had passed some drug screens and was allowed visitation with the Children but that visitation was subsequently suspended after she failed a drug test for methamphetamine in March 2021. Mother again failed a drug screen for methamphetamine in April 2021, approximately two and a half months before trial. Mother clearly had not remedied her drug problem. The evidence does not preponderate against any of these findings of fact by the Juvenile Court. We find and hold by clear and convincing evidence, as did the Juvenile Court, that termination of Mother's parental rights is in the Children's best interest.

## **Conclusion**

The judgment of the Juvenile Court is affirmed in its entirety, including the termination of Mother's parental rights, and this cause is remanded to the Juvenile Court for collection of the costs assessed below. The costs on appeal are assessed against the appellant, Mary K., and her surety, if any.

_____
D. MICHAEL SWINEY, CHIEF JUDGE